OPINION OF THE COURT
Gabrielli, J.
The People appeal from an order of the Appellate Division, which affirmed a decision of Supreme Court dismissing the indictments against defendants. The sole question presented by the People’s appeal is whether the District Attorney’s legal instruction to the Grand Jury impaired the integrity of that body’s deliberations and thereby rendered the indictments "defective” within the meaning of CPL 210.20 (subd 1, par [c]; see CPL 210.35, subd 5).
*393 The indictments charged defendants with having individually committed the crime of obscenity in the second degree (Penal Law, § 235.05). Under subdivision 1 of section 235.00 of the Penal Law, any material or performance may be found to be obscene if "the average person, applying contemporary community standards, would find that considered as a whole, its predominant appeal is to the prurient interest in sex”. Attempting to fulfill his obligation to provide legal guidance to the Grand Jury (CPL 190.25, subd 6), the District Attorney instructed that body on the law of obscenity by reciting this statutory definition virtually verbatim. He neglected to advise the Grand Jury, however, that the material before it would have to be judged "obscene” from the viewpoint of the average person applying State-wide "contemporary community standards” (People v Heller, 33 NY2d 314, 322-323). When this omission became apparent as a result of defendants’ motion to inspect the Grand Jury minutes (see CPL 210.30), the trial court promptly dismissed the indictments as defective on the ground that the erroneous legal instruction had impaired the integrity of the Grand Jury (CPL 210.20, subd 1, par [c]; 210.35, subd 5). This determination was affirmed by the Appellate Division. We conclude, however, that the decisions below must be reversed.
We note at the outset that we are not persuaded by the People’s contention that the State-wide standard for obscenity articulated in People v Heller (33 NY2d 314, supra) should be modified. Although the United States Supreme Court has indicated that the issue of what constitutes obscenity may be determined with reference to local community standards (Jenkins v Georgia, 418 US 153, 157), we remain convinced that the rule established in Heller is the most effective approach to closing the door on censorship "by local authorities * * * who would [otherwise] be free to form their own notions as to what constitute^] patently offensive material” (People v Heller, supra, at p 322). For this reason, we decline the People’s invitation to reconsider Heller, and we reaffirm our view that the contemporary standards of communities throughout the State are the proper measure of what is "obscene” within the meaning of our Penal Law.
This conclusion, however, does not end the inquiry in the present case. While it is true that the legal instructions given to the Grand Jury were incomplete in light of Heller, it does not necessarily follow that the resulting indictments should *394 have been dismissed as defective. The primary function of the Grand Jury in our system is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution (see, e.g., People v Van Dusen, 56 Misc 2d 107; People v McAdoo, 45 Misc 2d 664, affd 51 Misc 2d 263, cert den 386 US 1031; People v Vosburg, 21 Misc 2d 372; see CPL 190.05, 190.65, subd 1). In the ordinary case, it may be said that the Grand Jury has properly carried out this function when it has issued an indictment upon evidence that is legally sufficient to establish that the accused committed a crime (CPL 190.65, subd 1). The Grand Jury is not, of course, charged • with the ultimate responsibility of determining the guilt or innocence of the accused (see, e.g., People v Van Dusen, supra; People v Vosburg, supra). That duty, in our system, resides with the petit jury, which has the obligation of assessing the evidence in light of the applicable legal rules and determining whether the People have proven the guilt of the accused beyond a reasonable doubt.
Given this functional difference between the two bodies, it would be unsound to measure the adequacy of the legal instructions given to the Grand Jury by the same standards that are utilized in assessing a trial court’s instructions to a petit jury. Indeed, the difference in the extent and quality of the legal instructions that must be given to the two bodies is reflected in the Criminal Procedure Law, which, on the one hand, directs the court or District Attorney to give legal instruction to the Grand Jury only "[wjhere necessary or appropriate” (CPL 190.25, subd 6), but, on the other hand, requires a Judge presiding over a trial before a petit jury to state in detail "the fundamental legal principles applicable to criminal cases in general” as well as "the material legal principles applicable to the particular case” and "the application of the law to the facts” (CPL 300.10, subd 2). In view of the divergent functions of the two bodies, we hold that a Grand Jury need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law. We deem it sufficient if the District Attorney provides the Grand Jury with enough information to enable it intelligently to decide whether a crime has been committed and to *395 determine whether there exists legally sufficient evidence to establish the material elements of the crime.[1]
This lesser standard was clearly met in the present case. The District Attorney adequately informed the Grand Jurors of the essential elements of the crimes they were being asked to consider by reading the applicable provisions of the Penal Law, including the statutory definition of obscenity. While his failure to furnish complete instructions regarding the proper legal standard for assessing obscenity would have been fatal if a determination of guilt hinged upon the instruction, it cannot be said that the omission was so significant in the context of the Grand Jury’s deliberations as to prejudice the interests of the defendants and render the indictments legally defective. Hence, it was error for the trial court to dismiss the indictments on this ground alone.
 We note that we do not intend to suggest by our holding in this case that inadequate or incorrect legal instructions to the Grand Jury would never constitute grounds for dismissing an indictment as defective under CPL 210.35 (subd 5). To the contrary, we recognize that there may be situations in which the instructions to the Grand Jury are so misleading that the indictment could not be permitted to stand even though it is supported by legally sufficient evidence (see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 210.35, pp 384-3S5).[2] It is well established that a citizen cannot be haled into court and tried for an infamous crime unless he has first been indicted by a Grand Jury which has had the opportunity to consider the evidence against him (NY Const, art I, § 6; see People v Iannone, 45 NY2d 589, 593; Matter of Simonson v Cahn, 27 NY2d 1, 4-5).[3] Indeed, the *396 Grand Jury historically has acted as a buffer between the State and its citizens, protecting the latter from unfounded and arbitrary accusations (see, e.g., Gerstein v Pugh, 420 US 103, 117, n 19; United States v Calandra, 414 US 338, 342-343; Matter of Keenan v Gigante, 47 NY2d 160, 167-168; People v Iannone, supra, at p 594). When the District Attorney’s instructions to the Grand Jury are so incomplete or misleading as to substantially undermine this essential function, it may fairly be said that the integrity of that body has been impaired. Under such circumstances, CPL 210.35 (subd 5) as well as our State constitutional guarantees might well require dismissal of the Grand Jury’s indictments. In contrast, where, as here, the District Attorney omits information which would be essential for the petit jury’s determination of guilt but which is not essential to the Grand Jury’s less exacting responsibility of determining whether a prima facie case exists, it is inappropriate to dismiss the indictments on the ground specified in CPL 210.35 (subd 5).
Accordingly, the order of the Appellate Division should be reversed, the indictments reinstated and the case remitted for further proceedings on the indictments.

. In the ordinary case, this standard may be met by reading to the Grand Jury from the appropriate sections of the Penal Law (see People v Lawson, 84 Misc 2d 24, 28; People v Dingle, 70 Misc 2d 840, 844).

. The result might have been different here, for example, had the District Attorney provided the Grand Jury with erroneous and misleading instructions in response to a request from that body for clarification or amplification of the meaning of the phrase "contemporary community standards”.

. We note that, although the right to an indictment ordinarily cannot be waived (see Matter of Simonson v Cahn, 27 NY2d 1, 4), our State Constitution now provides for a limited exception to this rule. Under this constitutional provision, “a person held for the action of a grand jury upon a charge for [an infamous] offense, other than one punishable by death or life imprisonment, with the consent of the district attorney, may waive indictment by a grand jury and consent to be prosecuted on an information filed by the district attorney” (NY Const, art I, § 6; see People v Iannone, 45 NY2d 589, 593, n 4).