■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MICHAEL CARACCIOLA, Respondent.—Order, Supreme Court, New York County (Alfred H. Kleiman, J.), entered June 16, 1989, which dismissed the indictment charging defendant with official misconduct in violation of Penal Law § 195.00, affirmed.

This is a case in which a police sergeant is alleged to have used excessive force against persons uninvolved in a street demonstration near Tompkins Square Park in lower Manhattan, causing physical injuries to one victim. The Grand Jury failed to return a true bill on alternative theories of assault in

the third degree, i.e., intentionally or recklessly causing physical injury (see, Penal Law § 120.00 [1], [2]), but indicted defendant on the charge of official misconduct, on a theory that defendant had used excessive force. Having reviewed the prosecutor's instructions to the Grand Jury, we agree with the motion court that these instructions were too confusing to have been understood by the Grand Jury in considering the charges. As a result, the indictment warranted dismissal as defective (CPL 210.20 [1] [a]; 210.25 [1]). Accordingly, we affirm, with leave to re-present in accordance with CPL 210.20 (4), should the People choose to do so. Concur—Kupferman, J. P., Ross and Smith, JJ.

Milonas and Kassal, JJ., dissent in a memorandum by Milonas, J., as follows: The instant indictment arises out of a confrontation between police and demonstrators which occurred on the night of August 6th-7th, 1988, near Tompkins Square Park in lower Manhattan. Defendant Michael Caracciola, a police sergeant, was one of the officers detailed to the scene.

The People's version of the facts is as follows: In the course of an altercation between some officers and an individual who they were attempting to subdue, a man purportedly tossed some glasses or bottles at the policemen, who were in front of the 7A Cafe. Although the bottle-thrower had run up the street, defendant, along with other officers, entered the restaurant. When Yvonne Menard, an off-duty waitress, informed the police that the person whom they were seeking was not on the premises, defendant allegedly pushed her into a table. Marina Mollichelli, the manager, protested Menard's treatment, as well as defendant's presence in the cafe. Defendant responded by kicking her in the groin, pulling her hair and forcing her to the ground. Defendant thereupon advised Mollichelli that she was under arrest and dragged her by the hair across the floor, down two steps and onto the sidewalk. While being assisted by other officers in handcuffing her, he proceeded to club her on the back and neck with his nightstick. Subsequently, another officer issued a summons for disorderly conduct to Mollichelli, but the complaint was eventually dismissed on technical grounds.

On January 5, 1989, a Grand Jury began hearing testimony concerning the conduct of various police officers, including defendant herein, during the incident at Tompkins Square Park. The prosecutor submitted four counts against defendant on January 26, 1989, two of which were for assault in the

third degree and the other two for official misconduct. In that regard, the Grand Jury was asked to consider an assault charge accusing defendant of intentionally causing physical injury to Mollichelli and another assault count of having recklessly caused her physical injury. Each misconduct count was based on a corresponding assault theory. The Grand Jury then indicted defendant on one count of official misconduct in that "being a public servant, with intent to injure another person", he "committed an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act was unauthorized." An examination of the District Attorney's instructions to the Grand Jury reveals that they were clear, inclusive and largely paralleled the language of the relevant statutory provisions. However, the next day, the prosecutor, apparently uncertain about the actions taken by the Grand Jury, appeared before it, and the following conversation ensued:

"ADA * * * And I am here this morning on the People - v - John Doe number 3 [defendant herein], which was a case in which you voted two counts of official misconduct yesterday.

"In thinking about your vote I am here, not to ask you to change your vote in any way, but I want to perhaps clarify some of my legal instructions. I thought possibly—

"THE FOREPERSON: What did we vote against him again?

"ADA: Two counts of official misconduct.

"THE FOREPERSON: That's not correct. I thought just one.

"THE FOREPERSON: Two charges of assault and one of official—

"ADA: If that was a problem for you, that can be corrected. Let me explain—clarify my charge to you. The way the charges have been submitted to you at that particular time— and I am not suggesting that you change your vote or ask you to vote to change your vote in any way, I just want to make sure you had in your mind the instructions as I meant for you to understand them.

"We had submitted two separate theories of assault. And I had submitted a justification charge to you. And I perhaps did not make it clear in the way that you should evaluate the assault counts, first to determine whether or not the assault counts were made out, if they were made out, then you would apply the law of justification and if they were justified, you would dismiss those counts. The official misconduct counts, each of the official misconduct counts related to one of the assault counts. So that if you found that the assault counts

had not been made out, you could still consider the official misconduct counts.

"In another *[sic]* words, if you found that the elements of assault were just not made out, before you ever reached the issue of justification, you could still consider those official misconduct counts. However, if you had reached the issue of justification and said the assault was made out but it was justified, it seems the official misconduct counts would not lie. But if the grand jury was considering the official misconduct count on something else—".

The prosecutor did point out to the Grand Jury that once it has voted to dismiss a count, that is the end of the matter, and the jurors could not revote on the assault charges. While the foreperson explained that "I assumed there was one count of misconduct and that's what I told everybody, and that's what we voted on", the District Attorney remarked that "upon reconsideration I think that your vote is probably the wiser one. I mean I think that if that's what you're voting on, it's really—the official misconduct, then I think one count is appropriate. So if you—in other words, your understanding is that you voted, leave it that way and then just decide whether you want to leave it that way or you want to—". Following what, in effect, amounted to a colloquy between the prosecutor and the foreperson, with an occasional question or comment from another grand juror, the foreperson, after the Grand Jury had been left alone to deliberate, announced that "[w]e have voted to let the indictment stand as it is on the counts of John Doe Three."

In subsequently moving to dismiss the indictment, defendant urged that the indictment was in violation of CPL 200.50 in that it did not contain a plain and factual statement supporting every element of the offense charged with sufficient precision to apprise him of the conduct which is the subject of the accusation and that, moreover, there was a failure to make out the crime of official misconduct pursuant to Penal Law § 195.00. He also asserted that dismissal was warranted in the interest of justice, and, finally, he challenged the constitutionality of Penal Law § 195.00 on the ground that it was unconstitutionally vague as applied to him and that the Legislature, by enacting this provision, had improperly delegated to the Police Department its power to define and prohibit certain activity as criminal. However, it is significant that in granting the motion to dismiss, the Supreme Court did not rely upon any of the arguments advanced by defendant but, reserving the right to determine the constitutional issues

at a later date, concluded that "the charge to the jury relating to this charge was so confusing that if I found difficulty in following it, I can hardly find that the grand jury understood the charges." In that connection, it should be stated that the court did not explain in what manner the prosecutor's instructions were unclear or specifically allude to any purportedly confusing charge; rather, the Judge seems to have been disturbed by the fact that the Grand Jury's decision against indicting defendant for assault was, in the court's view, repugnant with its vote to indict for official misconduct. Therefore, the court observed that:

"In this particular case the assistant district attorney is charging two separate incidents: one, intentional assault arising out of an alleged kicking of the complainant, and the other, assault under the theory of recklessness, based upon his alleged actions in dragging the complainant down by her hair.

"As to both of these charges the grand jury voted no bill; in laymen's terms, found there was insufficient evidence as to both of these charges.

"However, the district attorney then stated that she was submitting, 'an official misconduct for each of these counts.'

"It turns out that the grand jury after a great deal of extensive discussions with the district attorney, I don't mean discussions in terms of informal discussions, I mean in terms of questioning, and charging by the assistant district attorney, further charging, ended up by what appeared to be a vote as indicated by the indictment of one count.

"Proof in the bill of particulars, it is alleged that defendant, as to the misconduct, 'used excessive force.'

"I frankly find it difficult to understand how one can find somebody guilty of a charge of using excessive force if the same jury, whether it's a grand jury, or triers of the facts, were to find that there was no sufficient evidence to show an intent to use force, or reckless use of force."

Thus, while the court expressed doubt concerning the clarity of the prosecutor's charge to the Grand Jury, without citing the particular instruction(s) deemed to be inadequate or incorrect, in fact the Judge appears to have granted dismissal of the indictment on the basis of alleged repugnancy notwithstanding that defendant never requested relief on this ground. Now, and for the first time on appeal, defendant, in response to the People's appeal from the order of the Supreme Court, complains that the legal instructions given to the Grand Jury were not sufficient and, indeed, were so confusing as to mis-

lead the grand jurors; he also contends that the evidence before the Grand Jury was inadequate to determine that his actions were unauthorized by the Police Department. Yet, those statements by the District Attorney which were supposed to have been so confusing, also mentioned for the first time on appeal, were uttered by her after the Grand Jury had already voted to indict defendant on one count of official misconduct. The Supreme Court has not held, and defendant does not claim, that the charges on the law delivered by the prosecutor during the January 26th session were in any way defective. It was at the conclusion of that sitting that the Grand Jury voted the indictment. Thus, although the District Attorney returned the next day and attempted to reopen the case, and there ensued a lengthy conversation between her and the foreperson, with some interjections from one or more jurors, the Grand Jury voted not to disturb the existing indictment, indicating that its members knew what they were doing and were little, if at all, influenced by the prosecutor's comments on January 27th.

In *People v Goetz* (68 NY2d 96, 115), the Court of Appeals held that "a Grand Jury need not be instructed on the law with the same degree of precision as the petit jury" *(see also, People v Valles,* 62 NY2d 36; *People v Calbud, Inc.,* 49 NY2d 389). In the instant situation, and as previously noted, the prosecutor's legal instructions generally tracked the language of the pertinent statutory sections and were not "so incomplete or misleading as to substantially undermine" the Grand Jury's "essential function" of preventing unfounded prosecutions *(People v Calbud, Inc., supra,* at 396; *see also, People v Hester,* 133 AD2d 302, 303).

The crux of the Supreme Court's objection to the indictment against defendant, however, was the allegedly repugnant vote by the Grand Jury. Yet, even assuming that dismissal of the assault charges was repugnant with retention of a count charging defendant with official misconduct (although, in reality, the elements of the offenses are not identical), there is no legal authority for the proposition that an indictment must be dismissed when there is repugnancy. On the contrary, inconsistent or repugnant counts are common at the accusatory stage of a criminal proceeding, and verdicts which appear to be repugnant have even been upheld after trial *(see, People v Goodfriend,* 64 NY2d 695; *People v Tucker,* 55 NY2d 1). Certainly, there is a strong possibility that the Grand Jury found lacking an element necessary in each of the assault charges but that all of the prerequisites for a count of official

misconduct were deemed to be present. Intentional third degree assault mandates that the accused possess the "intent to cause physical injury" (Penal Law § 120.00 [1]); reckless third degree assault requires that the defendant have "recklessly" caused physical injury (Penal Law § 120.00 [2]).

However, Penal Law § 195.00 (1), which occurs when a public servant "with *intent* to obtain a benefit or *to injure* or deprive another person of a benefit * * * commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized" (emphasis added), does not contain either an element of causing *physical* injury (merely an intent to injure) or reckless behavior. Consequently, it was entirely reasonable for the Grand Jury to have determined that while defendant intended to injure Mollichelli, he did not actually *cause physical* injury and did not act in a reckless manner. The Supreme Court was, accordingly, totally unjustified in granting dismissal of the indictment and, furthermore, doing so on a basis not even proposed by defendant. In my opinion, the order of the Supreme Court should be reversed and the indictment reinstated.