OPINION OF THE COURT
Rena K. Uviller, J.
Defendant has moved for dismissal of the indictment on the *909 grounds that the Grand Jury proceedings were defective and that its integrity was impaired. (CPL 210.20 [1] [c]; 210.35 [5].) This opinion elaborates upon the reasons for my earlier order, directing dismissal of the indictment, with leave to re-present to another Grand Jury.
The indictment charges defendant, a psychiatrist, with 18 counts of criminal sale of a prescription for a controlled substance, in violation of Penal Law § 220.65. Each count relates to the alleged sale of a prescription for controlled substances (specifically, psychotropic medications) to “Alex Nieto”, the alias of an undercover officer, posing as a patient, who visited defendant in his office on six separate occasions. Some of the prescriptions were for Mr. Nieto’s “wife” who did not personally appear in defendant’s office.
Defendant principally contends that the integrity of the Grand Jury proceedings was impaired by the prosecutor’s failure to instruct the Grand Jury adequately, and by her failure to play for the Grand Jury the audio and video recordings made by the undercover on each office visit. Those tapes have been provided to defense counsel and transcripts of them to the court in connection with the instant motion.
Those recorded conversations, the defendant asserts, demonstrate that he was acting in good faith and in the exercise of his professional judgment in prescribing the drugs; that the recordings reflect that defendant extensively counseled his “patient” on the dangers of addiction, urged him to enter a group therapy program, and implemented a gradual and steady withdrawal treatment plan; and that he was “entrapped” into issuing prescriptions for the absent “wife”.
Because the undercover’s testimony reasonably, albeit sketchily, summarized his encounters with defendant (as reflected in the transcripts of the recordings), the failure to play the tapes to the Grand Jury, in and of itself, , might not have undermined the integrity of the proceedings. This omission was compounded, however, by the prosecutor’s failure to provide adequate legal instructions regarding the gravamen of the crime, and her failure to respond appropriately to grand juror queries directed to that issue.
As defined by statute, and recited in the indictment, it is an essential element of the charged crime that the defendant knowingly sold the prescription for a controlled substance “unlawfully”, that is, “other than in good faith in the course of his professional practice.” (Penal Law § 220.65.) Normally, a *910 physician may, of course, dispense such prescriptions when treating patients. (See, Public Health Law § 3331 [2].) Such authority comports not only with statutory and regulatory authorization. It is consistent with the common understanding of what physicians are permitted to do.
It is dispensation, “other than in good faith”, that is a critical element, indeed the gravamen of the crime. Although the phrase is inherently ambiguous (see, People v Dias, 197 AD2d 387, 388 [“ ‘ “(g)ood faith” requires the physician to have acted for a bona fide medical purpose’”]), it has been interpreted in the context of both the Penal Law and the Public Health Law.
Thus, other than good faith may be evinced by the physician’s knowledge that the prescriptions or the drugs were to be resold (People v Pal, 56 AD2d 640); by unusually brief or perfunctory patient visits; by dosages beyond that required for legitimate treatment, or payments that did not reflect normal fees for office visits (People v Dias, 197 AD2d 387, supra); by an absence of patient symptoms (cf., Matter of Ripton v New York State Dept. of Health, 85 AD2d 899; People v Pal, supra); and by knowledge, with various exceptions, that individuals to whom the prescriptions are issued are addicts or habitual users (see, Matter of Koudouris v Axelrod, 102 AD2d 954; Public Health Law § 3331 [1]); although prescriptions for addicts are permissible to treat acute withdrawal symptoms (Public Health Law § 3351). The failure to conduct a physical examination or issuance of a supply above the permissible maximum do not, in and of themselves, necessarily evince bad faith (People v Pal, supra).
While a Grand Jury need not be instructed regarding elements of a crime with the same precision required for a petit jury, the prosecutor must nonetheless provide that body “with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime.” (People v Calbud, Inc., 49 NY2d 389, 394-395.)
This is especially true when, as here, the operative statutory element is not facially self-evident. (See, People v Newspaper & Mail Deliverers’ Union, 170 Misc 2d 790, 799 [indictment charging labor union with enterprise corruption dismissed for failure to instruct Grand Jury on meaning of certain labor law terms, when their meaning is “not intuitively obvious”]; see also, People v Ramos, 223 AD2d 495 [indictment dismissed for failure to define “residence” regarding charge of false voter *911 registration and related crimes]; People v Jones, 157 Misc 2d 45 [indictment dismissed for failure to explicate “causation” and “proximate cause” when victim died of pneumonia two years after poisoning].)
The Grand Jury transcript in this case reveals notable confusion and uncertainty by the jurors as to the nature of the proscribed conduct, and whether the defendant had engaged in it. One juror inquired whether there was evidence of an unusual pattern of prescriptions issued by defendant, to which the witness, a Medicaid fraud investigator, replied that there was not. Another inquired whether “the reason that they’re [the issuance of prescriptions] considered a criminal offense [is] the fact that * * * he didn’t give [the ‘patient’] a physical? Otherwise, why is it a criminal offense to sell those things, they’re being sold and manufactured and sold for a reason?”
In response to these queries and the jurors’ evident confusion, the prosecutor made no attempt to focus their attention on the phrase “other than in good faith” or to elucidate that concept. Instead, she rotely reread all of the statutory provisions, including prolix definitions of “practitioner”, “sell”, “controlled substance”, and “prescription”.
While a bare bones reading of the statute may provide adequate legal instruction in “the ordinary case” (People v Calbud, Inc., 49 NY2d 389, 395, n 1, supra), the perfunctory and nonresponsive statutory reiteration here deprived this Grand Jury of the legal advice to which they were entitled. (See, CPL 190.25 [6].) Where the operative concept is not self-evident, the prosecutor, as legal advisor, should call it to the jurors’ attention, especially when they are expressing uncertainty, and provide at least some explication. Without being informed of the critical element or any explication of the phrase “other than in good faith”, the jurors were at sea as to the substance of the crime they were being asked to consider, that is, the nature of the proscribed conduct. Nor were they given sufficient information to evaluate whether the defendant had engaged in it.
These failures impaired the integrity of the Grand Jury proceedings and rendered them defective. (People v Calbud, Inc., supra.) Accordingly, the indictment is dismissed, with leave to re-present to another Grand Jury.
Upon re-presentation, the prosecutor shall provide some explication of the statutory provision “other than in good faith”, and shall either play the tapes or provide testimony more fully reflecting their content, such as the duration of each visit, the *912 nature of the defendant’s instructions and advice to the undercover witness, and a fuller recitation of the exchanges regarding the witness’ “wife”.
Defendant’s claims as to the prosecutor’s failure to provide evidence of or instructions as to the defense of entrapment, as to the prescriptions for the “wife”, is without merit.