OPINION OF THE COURT
William E. Garnett, J.
Is the integrity of a grand jury impaired to the extent that there is a risk of prejudice to a defendant where a grand jury warden, in violation of CPL 190.25 (6), instructs the grand jury on its authority to reconsider its initial decision to dismiss?
On April 12, 2004, the defendant was arraigned on a felony complaint which charged assault in the second degree et al. On April 26, 2004, the District Attorney began the presentation of evidence to a grand jury by eliciting the testimony of various witnesses. The defendant had given notice pursuant to CPL 190.50 (5) (a) to testify before the grand jury. The defendant and defense witnesses offered by the defense testified on May 4, 2004. Thereafter, on the same day, the prosecutor charged the grand jury on the law of assault in the second degree and various misdemeanors including assault in the third degree. The charge also contained the law of justification. The grand jury deliberated and reported a no true bill on all counts. The finding of dismissal was not filed with the court.
On May 5, 2004, the foreperson of the grand jury approached a grand jury warden and indicated that the grand jury, which had voted the dismissal of the charges, “wanted to change their vote.” (Vitale affidavit K 3.) The warden told the foreperson that the vote could be changed but advised the foreperson that “certain procedures . . . needed to be done.” (Id.)
Without consulting with the court or any assistant district attorney, the warden entered the grand jury room and addressed the grand jury. The warden inquired as to whether the sentiments expressed by the foreperson reflected the entire jury’s view of the case. Apparently convinced that the grand jury wished to reconsider its May 4th vote, the warden “instructed . . . the Grand Jury that they needed 12 or more in order to re-vote the case.” (Id. U 4.) The warden left the room and the grand jury deliberated. Thereafter, the grand jury apparently informed the warden that it had voted to reconsider the case. The warden’s colloquy with and instructions to the grand jury were not recorded. In addition, the putative vote of the grand *704 jury was not memorialized in the secretary’s log of action taken by the grand jury.
After the vote, the warden, again without any notification to the District Attorney’s office, escorted the grand jury foreperson and secretary to the courtroom of Justice Deborah Dowling who had impaneled this grand jury. The foreperson and secretary were sworn and a recorded colloquy between these persons and Justice Dowling ensued. The foreperson told Justice Dowling that the grand jury wanted a revote. When Justice Dowling asked how many jurors had heard all of the evidence, the secretary replied: “Twenty-two of the twenty-three.” (Minutes before Justice Dowling on May 5, 2004 at 3.) When the Judge inquired whether the vote had been unanimous, the secretary replied: “No, we had at least 12 that wanted to revote. But it was not all twenty-two.” (Id.) After determining that no external pressure had influenced the grand jury’s vote, the court asked whether “they” had actually taken a vote. The clerk, not the foreperson or the secretary, replied: “Yes, they did.” (Id. at 5.) The secretary next stated: “We use the same standard if we had 12. The same we use for every other vote we did.” (Id.) The Judge then authorized the recharge of the grand jury. The warden returned to the grand jury and informed two assistant district attorneys of the court’s ruling. The record is barren of any indication that Justice Dowling knew that the warden had instructed the grand jury or that the instructions and vote had not been recorded in any way.
The assigned Assistant District Attorney entered the grand jury room without any confirmation of the court’s ruling. The recharge was commenced without any record verification of the grand jury’s request or vote. The recharge was prefaced by a detailed summary of the testimony of every witness who had testified before the grand jury. The grand jury minutes are devoid of any request by any grand juror for the marshaling. The Assistant District Attorney, at oral argument of this motion, indicated that a request had come from the foreperson. However, again, this request was off the record. The Assistant’s recapitulation of the testimony, some of which had only been given one day before, was in stark contrast to the proffered marshaling on May 4, 2004. On that day, the Assistant had asked the grand jury whether it wished the evidence marshaled and the jury had declined. (Grand jury minutes, May 4, 2004, charge, at 4.)
The Assistant’s marshaling of the evidence on May 5, 2004 resulted in omissions and inaccuracies in the review of the *705 testimony of the defense witnesses. As the Assistant’s charge on both days demonstrated, a critical issue in this case was whether the acts of the defendant were justified.
The grand jury was charged on the law including all of the counts which had been rejected on May 4, 2004. After deliberating, the grand jury voted a true bill on the counts of assault in the third degree, attempted assault in the third degree and menacing in the third degree. These charges were included in a prosecutor’s information which was filed with the Criminal Court.
The defendant has moved to dismiss the prosecutor’s information pursuant to CPL 170.50 (1) (b) on the ground that the grand jury proceeding resulting in the information was defective.[1]
The defendant asserts that the grand jury proceeding was defective in that the actions of the grand jury warden impaired the integrity of the grand jury and that impairment may have prejudiced the defendant.
CPL 190.25 (6) reserves to the court and the District Attorney the role of legal advisor to the grand jury. The statute admonishes the grand jury not to seek or receive legal advice “from any other source.” This statute also mandates that any legal instructions given to the grand jury be recorded.
Clearly, informing the grand jury of its authority to reconsider a vote sua sponte is a legal instruction which should be recorded. This legal principle was reaffirmed as the law only in 1997 in the case of People v Montanez (90 NY2d 690 [1997]). Thus, in this case, the grand jury warden, not the court or the District Attorney, informed the grand jury of its procedural legal position off the record. Therefore, this statute was violated in two ways. The source of the legal instruction was improper and the instruction was not recorded for prospective court review. Moreover, the putative action of the grand jury requesting a revote by a vote of at least 12 jurors was never memorialized in the secretary’s log of the grand jury’s actions.
When deciding a motion made pursuant to CPL 170.50 (1) (b), the same standard governing the disposition of a motion to dismiss an indictment obtains. (CPL 170.50 [2].) CPL 210.35 (5) provides that a grand jury proceeding is defective when “[t]he proceeding . . . fails to conform to the requirements of article *706 [190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result.” The remedy of dismissal for an impaired grand jury proceeding is available where there is a “possibility of prejudice” and does not require a showing of actual prejudice. (People v Sayavong, 83 NY2d 702, 709, 711 [1994]; People v Wilkins, 68 NY2d 269, 276 [1986]; People v Di Falco, 44 NY2d 482, 487 [1978].) Dismissals are justified where the misconduct “potentially prejudice [s] the ultimate decision reached by the Grand Jury.” (People v Huston, 88 NY2d 400, 409 [1996].) Moreover, “[t]he likelihood of prejudice turns on the particular facts of each case.” (Id.) Where the impairment of the grand jury process is established and the risk of prejudice to a defendant is palpable, “the indictment [cannot] be permitted to stand even though it is supported by legally sufficient evidence.” (People v Calbud, Inc., 49 NY2d 389, 395 [1980].) Thus, the impairment of the grand jury process cannot be ignored simply because the prosecution has adduced legally sufficient evidence.
The People contend that the warden was acting “merely in an administrative capacity.” A warden is authorized by two paragraphs of the CPL to be present in the grand jury room. (CPL 190.25 [3] [b], [e].) Subdivision (3) (b) provides that a “public servant authorized to assist the grand jury in the administrative conduct of its proceedings” may be present. This statute does not cloak the warden with the authority to address legal matters and certainly does not delegate to the warden the power to entertain any questions other than administrative inquiries. A request by the grand jury on the procedure to be followed for a revote is a legal question which should have been addressed by the District Attorney or the court. The warden could have fulfilled his statutory obligation to assist the grand jury by alerting the court or the prosecutor to the grand jury’s inquiry.[2]
The prosecution avers that the defendant cannot establish the “possibility of prejudice” required for a dismissal of the prosecutor’s information. The risk of prejudice is inherent in this case as the grand jury had initially dismissed all of the charges. The record does not reflect what the vote for dismissal had been. Assuming that at least 12 grand jurors had voted to dismiss the charges, then the secretary’s statement to Justice Dowling that at least 12 grand jurors had voted to reconsider *707 the case may have indicated the changed position of only two grand jurors. This possible minor shift in sentiment magnifies the significance of any comment or comments the warden may have made to the grand jury in response to its inquiry. Thus, the effect of the warden’s off-the-record remarks may have been crucial in the grand jury’s decision to request a revote.
In addition, the detailed marshaling of the testimony by the Assistant District Attorney impaired the integrity of the grand jury and created the possibility of prejudice when the case was recharged. On May 4, 2004, only a day before the revote, the grand jury had not requested a summary of the testimony. Yet, only a day later, the Assistant gave a comprehensive summary of the testimony without any record request. As a body, this grand jury had not requested a review of the testimony on May 4th. Why did the grand jury need a complete marshaling on May 5th? The impression left is that the summary was a device to persuade, rather than to refresh the recollection of, the grand jury. The danger of marshaling is that certain evidence will be emphasized or mischaracterized. That is precisely what happened in this case when the Assistant summarized the testimony of the defendant and the defense witnesses.
The submission of the justification charge was an acknowledgment by the District Attorney that there was a reasonable view of the evidence which would support such a defense. The Assistant’s rendition of the defendant’s testimony and the testimony of the witnesses who supported the defendant’s position mischaracterized and omitted facts which were relevant to the grand jury’s consideration of the defense of justification. These inaccuracies and omissions make tangible the possibility and risk of prejudice to the defendant.
In conclusion, the grand jury process was impaired when the warden replied to and instructed the grand jury on its authority to reconsider its earlier action. This impairment was exacerbated by the absence of a record of the colloquy. This request was not an administrative inquiry but was a legal question which should have been referred, in the first instance, to the District Attorney or the court as the legal advisors to the grand jury. When the warden entered the grand jury room to instruct the jury as to its power to reconsider and the procedure to effectuate the revote, the warden had exceeded his authority and had become an unauthorized legal advisor to the grand jury. The absence of a record is a further violation of CPL 190.25 (6) as the statute mandates a record of any instructions given to a *708 grand jury. The statute identifies legal instructions as critical components of the grand jury procedure which should be scrutinized to insure their propriety and correctness. Simply, in this case, a layperson had instructed the grand jury on a legal matter without a record. This court is in no position to assess the impact of the warden’s comments to the grand jury. It is clear that the warden did not read any script in his legal advice and that he extemporized comments concerning his knowledge of the law regarding the grand jury’s authority and procedure.
Although the evidence presented to the grand jury was legally sufficient to support the charges, it is no panacea to every impairment of the grand jury process that legally sufficient evidence was presented to support the charges. As the Court of Appeals opined in People v Calbud, Inc. (supra), such an approach would countenance improper grand jury practice. When the process has been violated by an improper action, the court must examine the particular facts of the case to determine whether “the ultimate decision reached by the Grand Jury” was potentially prejudiced. (People v Huston, 88 NY2d at 409.)
The possibility and risk of prejudice to the defendant are palpable in this case. Prejudice is obvious in that the impairment of the grand jury occurred after the grand jury had voted to dismiss all of the charges. Moreover, the Assistant’s marshaling of the evidence contained inaccuracies and omissions which were critical to the grand jury’s decision particularly in regard to the defense of justification. The District Attorney recognized that this was a close case by the inclusion of the justification charge. The unsolicited marshaling constitutes an independent basis for the court to conclude that the integrity of the grand jury was impaired and that prejudice may have occurred. Thus, the record establishes the risk that the grand jury’s ultimate decision in this case was prejudiced.
In light of the foregoing facts and legal analysis, the motion to dismiss the prosecutor’s information pursuant to CPL 170.50 (1) (b) is granted.[3]
[Portions of opinion omitted for purposes of publication.]

. The District Attorney has conceded that the count of attempted assault in the third degree should be dismissed.

. The second paragraph has no application in this case as it authorizes the presence of the warden during the testimony of an incarcerated witness.

. The People have not requested this court’s permission to re-present the case to another grand jury. (CPL 170.50 [3].)