People v Armstrong (2024 NY Slip Op 51430(U))

[*1]

People v Armstrong

2024 NY Slip Op 51430(U)

Decided on October 21, 2024

Supreme Court, Kings County

Daniels-DePeyster, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 21, 2024
Supreme Court, Kings County

The People of the State of New York

against
Demetrius Armstrong, Defendant.

Indictment No. 74042-24

Cassidy Meghan Lane, Esq. of Brooklyn Defender Services for the defendant
ADA Marjeta Nikolovski for DA Eric Gonzalez, Kings County District Attorney's Office

Claudia Daniels-DePeyster, J.

The defendant, who is charged with Criminal Possession of a Weapon in the Second Degree (PL § 265.02) and other related charges, moves for various relief in an omnibus motion. The Court finds as follows: I. Timeliness
The People urge this Court to summarily deny the defendant's omnibus motion as it was filed outside of the 45 days mandated by CPL § 255.20(1) without any good cause (see People's Motion at ¶ 32).
Pursuant to CPL § 255.20(1), all pre-trial motions must be filed within 45 days of arraignment (arraignment on the indictment in a felony case). Extensions of the 45-day rule are permitted where a defendant, with due diligence, could not have previously been aware of the grounds upon which to make the motion or upon a showing of "good cause" why the motion could not have been made within the specified time frame (CPL § 255.20[3]; compare People v. Anderson, 201 AD2d 658, 659 [2d Dept, 1994] (defendant's motion properly denied; motion "was made nearly five months after the Huntley hearing was conducted, and defense counsel failed to offer an adequate explanation as to why the request could not have been made sooner") with People v. Walker, 19 Misc 3d 444 [Sup. Ct. Monroe Co. 2008] (motion properly entertained two years after the defendant's arraignment where Grand Jury testimony was disclosed on the eve of trial; compare People v. Wisdom, 23 NY3d 970 [2d Dept, 2014] (the defendant's motion to dismiss the indictment on the grounds that the Grand Jury proceedings were fundamentally defective was not untimely, even though it was filed after the prosecution presented its proof at trial, where the defendant was not aware of the operative facts supporting his challenge to the Grand Jury proceedings until after the prosecution presented its case) with People v. Rahmen, 302 AD2d 408, 409 [2d Dept, 2003] ("the Supreme Court should have summarily denied the defendant's motion pursuant to CPL 210.40 (1), as he failed to show good cause for making the [*2]motion more than 45 days after his arraignment"); cf People v. Little, 83 Misc 3d 1213[A] [Sup. Ct. Kings Co. 2024] (motion deemed untimely when filed 68 days after the filing of the People's certificate of compliance)). The purpose of the 45-day rule is "to require a defendant to prepare for trial promptly and to avoid delay of trial because of pre-trial motions made by a defendant on the eve of trial solely for the purpose of delaying the trial" (People v. Johnson, 112 Misc 2d 578, 579 [Co. Ct. Johnson Co. 1982]).
Here, the defendant was arraigned on the felony indictment on July 29, 2024. Forty-six days later, on August 28, 2024, the defense filed the instant omnibus motion. Defense counsel provides no explanation in their motion papers for the late filing. However, under the circumstances of this particular case, the Court will consider the defendant's motion, as it was only one day outside of the 45-day time period set forth in CPL § 255.20.
II. Inspection of the Grand Jury Minutes
The Court has conducted an in-camera inspection of the minutes of the Grand Jury proceedings, including the supplied exhibits, and denied the defense motion to dismiss the indictment in full (see CPL § 210.20[1][b]; see CPL § 210.20[1-a]; see CPL § 210.30).
"[A] Grand Jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense . . . and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense" (CPL § 190.65[1]). "Legally sufficient evidence" is defined as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL § 70.10[1]). For purposes of Grand Jury proceedings "competent evidence" is evidence admissible pursuant to CPL § 190.30 ("Except as otherwise provided in this section, the provisions of article sixty, governing rules of evidence and related matters with respect to criminal proceedings in general, are, where appropriate, applicable to Grand Jury proceedings"); see CPL Art. 60; see also People v. Swamp, 84 NY2d 725, 730 [1995]). In particular, hearsay is inadmissible in the Grand Jury unless it falls under one of the exceptions to the rule or one of the specific exceptions enumerated in CPL § 190.30 (see e.g., People v. Pelchat, 62 NY2d 97 [1984]). When assessing the sufficiency of the evidence before a Grand Jury, courts must evaluate "whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted — and deferring all questions as to the weight or quality of the evidence — would warrant conviction" (People v. Mills, 1 NY3d 269, 274-275 [2003]).
A. Detective Linder's Testimony
Here, the defendant argues that the People failed to establish the charged offenses through competent evidence (see Defense Motion at § I). Specifically, the defendant argues that Detective Vincent Lindner's "testimony invaded the province of the jury when he was asked to opine as to what was depicted in video evidence" (Defense Motion at ¶ 24). The defendant points to four issues in particular: (1) the detective was not a witness to the incident; (2) "the detective does not make an identification from one image, instead drawing the vague conclusion that from video surveillance he believes it to be" the defendant; (3) "the detective cannot express any one clear factor that makes him think" it is the defendant in the videos; and (4) lack of corroboration of the identification (see Defense Motion at ¶ 30). This Court disagrees.
The Grand Jurors in this case were given the opportunity to view a compilation of the surveillance videos recovered in the case and referenced by the witnesses, evaluate it, and decide for themselves what and who it showed (see People's Grand Jury Exhibit 25 — surveillance [*3]compilation video; see also People v. Russell, 79 NY2d 1024 [2d Dept, 1992] (the trial court did not abuse its discretion in allowing lay witnesses, who did not witness the bank robbery, to identify the defendant as the person depicted in surveillance photographs);contra People v. Peralta, 22 Misc 3d 1130[A] (Sup. Ct. Qns. Co. 2009] (the officer who identified the defendant in the surveillance video was not a witness to the crime; the People did not play the video for the jurors and never elicited any testimony to establish the authenticity of the video)). The jurors were also provided a picture of the defendant, allowing them to compare the photo to the video and determine for themselves if the person in the video was in fact the person in the photo (see People's Grand Jury Exhibits 11, 12). Notably, the surveillance video provided multiple angles and vantage points of the person in question, sometimes for extended periods. Moreover, when Detective Lindner testified that he identified the defendant from the surveillance video, he noted that he had previously interacted with the defendant on numerous occasions, where he had an opportunity to observe the defendant's face and build (see Grand Jury Minutes — July 1, 2024, at 33; contra People v. Gibson, Ind. 0065-2020 [J. Yearwood, Nov. 10, 2020] (detectives identification testimony improper where testimony did not establish any familiarity with the defendant). Contrary to what the defense argues, Detective Lindner also testified that he recognized the defendant's facial features, long hair, and short stature in the video (see Grand Jury Minutes — July 1, 2024, at 33 — 34).
Additionally, here, unlike many of the cases cited by the defense, there was no commentary by the witness while the video played (see e.g., People v. Lewis, 225 AD3d 896 [2d Dept, 2024](police officers should not have been permitted to narrate and offer their opinions on portions of surveillance video; there was no basis for the two officers to testify, among other things, that defendant could be seen on the video "inside the [vehicle]" and "reaching into the back seat" of the vehicle); see e.g., People v. Ramos, 218 AD3d 495, 496 [2d Dept, 2023] ("the detective improperly narrated the video and the detective's interpretation of the video, which was not necessarily supported by the video itself"); see e.g., People v. Griffith, Ind. 70856-2023 [J. Fabrizio, July 12, 2023] (testimony of officers who provided a narrative of events depicted in the video, where the officers were not witnesses, was improper); see e.g., People v. Flores, Ind. 2169-2019 [J. Lewis, Feb. 19, 2020] (running "play by play" commentary by detective regarding the actions and conduct of the defendant which could be observed directly by the grand jurors interfered with the role of the Grand Jury and served no legitimate purpose)). Instead, here, the jurors viewed the video almost entirely uninterrupted. Moreover, the People elicited testimony about the authenticity of the videos and properly instructed the jurors.
As to Detective Linder's testimony that he interacted with the defendant "numerous times over the last ten years," the Court does not find this to be prejudicial or, as the defense argues, a "suggestion that Demetrius Armstrong is a bad person who has committed crimes since early childhood," as the Detective makes no reference to arrests or interactions in a negative capacity. (Grand Jury Minutes — July 1, 2024, at 33; Defense Motion at ¶ 40).
Therefore, this Court finds that Detective Lindner's testimony was not impermissible, and it did not render the Grand Jury proceedings defective.
B. Connection Between the Defendant and the Charged Offenses
The defendant argues that no connection was made in the Grand Jury between the defendant and the events of April 20, 2022 (see Defense Motion § I). The Court disagrees. The extensive video surveillance played for the Grand Jurors, which included footage of the suspect entering and exiting the same address the defendant provided the detective as his home address, [*4]established a sufficient connection between the defendant and the charged offenses. This Court finds no issue under these circumstances with the lack of eyewitness testimony or DNA evidence as proposed by the defense (see Defense Motion at ¶ 44).
C. Count Seven - Criminal Use of a Firearm in the First Degree
As to Count Seven, charging Criminal Use of a Firearm in the First Degree (PL § 265.09[1][A]), the Court finds that the charge cannot be sustained. "A person is guilty of criminal use of a firearm in the first degree when he commits any class B violent felony offense as defined in . . . section 70.02[a] and he . . . possesses a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged" (PL § 265.09[1][A]). Here, the top count of the indictment is a C violent felony. As no B violent felony is charged in the indictment, Count Seven cannot be sustained and is therefore dismissed (see CPL § 210.20[a][b]).
D. Remaining Counts
Upon review of the evidence presented, including the supplied exhibits, this Court finds that there was legally sufficient evidence to support the remaining charged offenses (see Defense Motion at ¶ 44; CPL § 190.65; see People v. Jennings, 69 NY2d 103 [1986]; see People v. Swamp, 84 NY2d 725 [1995])
The Court further finds that the Assistant District Attorney properly instructed the Grand Jurors on the applicable law (see People v. Calbud, Inc., 49 NY2d 389 [1980]; see People v. Lyons, 391 AD2d 508 [2d Dept, 2002]). The instructions set forth the essential elements of the crimes to be considered by the Grand Jurors and did not impair the integrity of the Grand Jury.
E. Release of Grand Jury Minutes
In arriving at the decision regarding the Grand Jury presentation, the Court finds that release of the unredacted Grand Jury minutes to the defendant is not "necessary to assist the court in making its determination on the motion" (see CPL § 210.30[3]). The Court, therefore, declines to order release of the Grand Jury minutes to the defendant, beyond what they are entitled to pursuant to CPL § 245.20[1][b]).
III. Motion to Dismiss Pursuant to People v. Singer
The defendant moves to dismiss the indictment due to prosecutorial delay in bringing these charges, claiming that the delay deprived him of his due process right to a speedy trial under the New York State Constitution and CPL § 30.20 (see Defense Motion at § II).
On or about April 21, 2022, Detective Lindner reviewed video surveillance related to the April 20, 2022, shooting in this case. Upon reviewing the video, the detective recognized the individual in the video to be Demetrius Armstrong (see People's Motion at ¶ 11). On June 2, 2022, Detective Bostic was shown still images from the video surveillance and confirmed that the individual depicted in the stills was the defendant (id. at ¶ 13). An I-Card was issued that same day (id. at ¶ 15). The defendant, however, was not arrested until June 27, 2024 (id. at ¶ 28). As such, the defendant asserts that the People did not have a good faith basis to delay charging him and that the resulting 26-month pre-indictment delay prejudiced him (see Defense Motion at ¶¶ 57-59).
A defendant's right to a speedy trial has long been protected. The Sixth Amendment seeks to ensure that defendants are not incarcerated indefinitely and that they are tried when evidence is likely to be fresh and witness memories sharp. "Excessive delay presumptively compromises the reliability of a trial in ways neither party can prove or, for that matter, identify" (Doggett v. United States, 505 US 647, 655 [1992]). In New York, however, the right to a speedy [*5]trial is broader, and the speedy trial statute has been interpreted as extending to unduly delayed indictments (see People v. Singer, 44 NY2d 241, 253 [1978]). Thus, an unjustified delay in prosecution may rise to a due process violation that must be remedied by dismissal.
The Appellate Court in People v. Taranovich (37 NY2d 442, 445 [1975]) enumerates the factors that the court must consider when an unconstitutional delay in prosecution is alleged. Those Taranovich factors are: (1) the extent of the delay; 2) the reason for the delay; 3) the nature of the underlying charge; 4) whether there has been an extended period of pre-trial incarceration; and 5) whether there is an indication that the defense has been impaired. When deciding the merits of a defendant's claim, "no one factor or combination of the factors . . . is necessarily decisive or determinative of the [prompt prosecution claim], but rather the particular case must be considered in light of all the factors as they apply to it" (People v. Wiggins, 31 NY3d 1 [2018]).
In considering each factor, the Court finds as follows:
1. The Extent of the Delay
As to the first factor, the extent or duration of the delay, although "there is no specific length of time that automatically results in a due process violation," longer delays are more likely to inflict greater harm (People v. Johnson, 39 NY3d 92, 97 [2022], citing Taranovich, supra). Although the length of the delay is significant, the Court of Appeals has consistently declined to establish a definitive time limit beyond which a criminal prosecution cannot proceed (Compare People v. Vernace, 96 NY2d 886 (2001) (People established good cause for a seventeen-year pre-indictment delay) with People v. Jones, 80 Misc 3d 467 [Sup. Ct. Kings Co. 2023] (delay of 31 months between death of victim and indictment was unreasonable)). As such, while 26 months is considerable, that alone does not a due process violation make (see e.g., People v. Bonsauger, 91 AD2d 1001 [2d Dept, 1983] (2-year delay)).
2. The Reason for the Delay
Next, the court must consider the reasons for the People's delay. Legitimate excuses for delay may include: overcoming a suspect's efforts to prevent prosecution by leaving the country, using different names and suborning witness perjury (see People .v Rivera, 226 AD3d 929, 931 [2d Dept 2024]); gathering additional evidence and forensic testing (see People v. Wald, 215 AD3d 497 [1st Dept 2023]; utilizing new technologies (see People v. Decker, 13 NY3d 12, 13-15 [2009]); and exhausting all possible leads (People v. Grant, 82 Misc 3d 991 [Sup. Ct. Kings Co. 2024]).
Here, the People's papers have laid out the extensive efforts made by the New York City Police Department to apprehend the defendant. This includes computer checks to ascertain the latest information on the defendant, surveillance of the defendant's home and places he was known to frequent, contacting the defendant's family members and probation officer, and obtaining a trap and trace warrant, among other efforts (see People's Motion ¶¶ 1 — 28). Therefore, the People's 26-month pre-indictment delay in arresting the defendant was not unreasonable under these facts.
3. The Nature of the Underlying Charge
Turning to the third factor, "the nature of the underlying crime can refer to both its severity and, relatedly, the complexity and challenges of investigating the crime and gathering evidence to support a prosecution" (Johnson, supra). For example, a prosecutor may need to be more thorough in preparing for a felony trial, as opposed to a misdemeanor, or there may be issues with the availability and willingness of witnesses to testify or the availability and quality [*6]of evidence (see e.g., Decker, 13 NY3d 12 [2009]). Here, those factors do not favor the defendant.
4. Extended Period of Pre-Trial Incarceration
As to factor four, extended pretrial incarceration, the defendant was not incarcerated until his 2024 arrest on this matter.
5. Impairment to the Defense
As to factor five, the "impairment of one's defense is the most difficult form of prompt prosecution prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown" (Wiggins, supra). Therefore, the Court must "recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify" (Id. at 18; see also People v. Regan, 39 NY3d 459, [2023]). The Court of Appeals has held that "a determination made in good faith to defer commencement of the prosecution for further investigation . . . or for other sufficient reasons, will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense" (Singer, supra, at 254 (internal citations and quotations omitted)).
Here, the defendant argues that the 26-month pre-indictment delay prejudiced him to the extent that his recollection of his whereabouts at the time of the 2022 shooting has faded and his ability to contact anyone who might have been with him, as an alibi or otherwise, has been impaired by the passage of time, and therefore, prejudiced his ability to prepare his defense (see Defense Motion at ¶¶ 57-59). He also argues that any potential surveillance video would be unpreserved and any evidence on his phone would be unavailable as he no longer has the same phone or phone number. However, the defendant was aware in 2022 that he was a suspect in the investigation, allowing him to attempt to preserve evidence when the matter was fresher than it is in 2024.
Therefore, balancing all of these factors, this Court finds that the defendant was not deprived of his due process right to prompt prosecution, and the motion for dismissal on that basis is denied.
IV. Motion to Suppress Physical Evidence and Request for a Dunaway Hearing
The defendant moves to suppress physical evidence obtained as the result of police "unlawful seizure" of the defendant (see Defense Motion at § III; see CPL § 710.20[1]). This motion is denied. The only physical evidence in this case is a firearm and shell casings, which were recovered on the night of the incident, nearly two years prior to the defendant's arrest (see People's Exhibit 1 — Notice and Disclosure Form). The request for a Dunaway hearing is discussed infra.
V. Motions for Suppression and Preclusion of Out-of-Court Identifications and Request for a Wade Hearing
The motion to suppress properly noticed identifications of the defendant, or in the alternative, grant a Wade (United States v. Wade, 388 US 218 [1967]) hearing, is denied, as there is no identification procedure in this case (see Defense Motion § V; see People's Motion at 16-20). The identification made by Detective Bostic was not a police-arranged identification. Unlike lineups or photo arrays, the detective was not presented with a group of individuals and asked to make an identification (see People v. Womack, 77 Misc 3d 624 (Sup. Ct. Queens Co. 2022] (officer's identification of defendant as the person he had spoken to several days earlier, made from wanted poster on officer's department email, was not a police-arranged identification procedure; see People v. Patoir, 72 Misc 3d 858 (Sup. Ct. Kings Co. 2021] (there was no [*7]identification procedure within the meaning of CPL § 710.30[1][b] where two police officers identified the defendant in a video in the grand jury, where neither officer was a witness to the alleged crime, but rather recognized defendant based on their prior interactions with him on some other date); see People v. Reyes, 69 Misc 3d 963 [Sup. Ct. NY Co. 2020] (where detective, who was not a witness to the crime, recognized the defendant as the person in security camera footage after studying the defendant's arrest photo from a previous arrest, there was no identification procedure)). Here, the People merely aired on the side of caution in providing notice (see People's Exhibit 1 — Notice and Disclosure Form).
As to the motion to preclude the prosecution from introducing evidence of any unnoticed identification testimony at trial, that motion is denied as premature with leave to renew in the event the People attempt to offer such testimony.
VI. Motion to Preclude In-Court Identification Testimony and Request for a Perdue Hearing
The defendant moves to preclude the identification testimony of Detective Lindner at trial or alternatively for a Perdue hearing (see People v. Perdue, 41 NY3d 245 [2023]). In Perdue, the Court of Appeals was asked to decide whether a witness was properly allowed to identify the defendant as the perpetrator for the first time in court, without having been subject to any pretrial identification procedure (id. at 247). The Court held that
[W]hen the People call a witness who may make a first-time, in-court identification, they must ensure that the defendant is aware of that possibility as early as practicable so that the defendant has a meaningful opportunity to request alternative identification procedures. If the defendant explicitly requests such procedures, a trial court may exercise its discretion to fashion any measures necessary to reduce the risk of misidentification. The ultimate determination of whether to admit a first-time, in-court identification, like any evidence, rests within the evidentiary gatekeeping discretion of the trial court. The court must balance the probative value of the identification against the dangers of misidentification and other prejudice to the defendant (id. at 247-248).
Here, the defendant was aware from pretrial discovery that the witness might make a first-time, in-court identification and consequently requested hearings to determine the reliability of Detective Lindner's first-time, in-court identification. While the detective's Grand Jury testimony does include some information about his familiarity with the defendant, it is lacking in detail. Therefore, in an abundance of caution, this Court grants a Perdue hearing to determine the detective's familiarity with the defendant and the independent reliability of his in-court identification.
VII. Request for a Mosley Hearing
It is unclear from the People's papers if they intend to seek to have either of the non-eyewitnesses (Detective Bostic or Lindner) make an identification of the defendant from surveillance video at trial. Should the People seek to elicit such testimony, a Mosley hearing (see People v. Mosley, 41 NY3d 640 [2024]) is granted to determine if such testimony would be permitted.[FN1]

VIII. Motion to Suppress Statement and Request for a Huntley/Dunaway Hearing
The People provided notice of a statement made by the defendant to law enforcement personnel that they planned on using in their direct case (see CPL § 710.30[1][a]; see People's Exhibit 1 — Notice and Disclosure Form). The defendant moves for suppression of this statement and argues that the statement was made involuntarily and in violation of the defendant's constitutional rights (see Defense Motion at § VII). Specifically, the defendant asserts that Detective Lindner had "exchanged emails with defense counsel asserting Mr. Armstrong's right to remain silent and right to counsel prior to the interrogation" (Defense Motion at ¶ 93). The defendant also contends that his statement must be suppressed based on his "unlawful arrest" (Defense Motion at § III). Specifically, the defendant argues that while there was an active warrant for the defendant's arrest, "there is no indication that the seizing officers were aware of the warrant or had an independent basis to seize Mr. Armstrong when they did" (Defense Motion at § III). In the alternative, the defendant requests a Huntley/Dunaway hearing (see People v. Huntley, 15 NY2d 72 [1965]; see Dunaway v. New York, 442 US 200 [1979]; see CPL § 60.45).
Given the legal implications and significance of a potential suppression ruling concerning defendant's statements to police, the court can exercise its discretion to conduct a Huntley/Dunaway hearing out of prudence. This would enable the Court to properly assess, among other matters: (1) the circumstances and timing of the defendant's arrest; (2) whether the defendant was fully informed of his Miranda rights before any questioning began; (3) whether the defendant knowingly and voluntarily waived those rights prior to making inculpatory statements; and (4) whether the statements made after receiving the Miranda warnings are admissible.
Holding a combined Huntleyi>/Dunaway hearing would further develop the record and allow the Court to make the appropriate determination. Therefore, under the circumstances of this case, the request for a Huntley/Dunaway hearing is granted.
As to the motion to preclude unnoticed statements, that motion is denied as premature with leave to renew in the event the People attempt to offer such statements.
IX. Motion to Preclude Cross Examination of Defendant Regarding Prior Convictions and Request for a Sandoval Hearing
The defendant moves to preclude the People from cross-examining the defendant regarding any prior criminal convictions and further moves to preclude the People from introducing at trial any evidence of the defendant's prior convictions or bad acts, arguing that the prejudicial effect of introducing such material outweighs the probative value (see Defense Motion at § VIII). In the alternative, the defendant requests a hearing pursuant to People v. Sandoval (34 NY2d 371 [1974]) and People v. Ventimiglia (52 NY2d 350 [1981]). The motion for a Sandoval/Ventimiglia hearing is granted.[FN2]
The determination of these hearings is reserved for the trial judge.
X. Reservation of Further Motions
Further motions may be made pursuant to CPL § 255.20 upon good cause shown.
The foregoing constitutes the Decision and Order of the Court.
Dated: October 21, 2024
Brooklyn, New York
Hon. Claudia Daniels-DePeyster, A.J.S.C

Footnotes

Footnote 1:In the interest of time and resources, the People are asked to make their determination prior to the start of any other pre-trial hearings so that the Mosley hearing may be conducted at the same time.

Footnote 2:Pursuant to CPL § 245.20(3), as soon as practicable but no later than 15 calendar days prior to the first scheduled trial date, the People shall notify the defendant of all specific instances of any prior uncharged criminal, vicious, or immoral conduct of which the People intend to use at trial for purposes of impeaching the defendant's credibility or as substantive proof of any material issue in the case.