OPINION OF THE COURT
 

 Titone, J.
 

 A Grand Jury whose term has been extended due to uncompleted business under CPL 190.15 (1) may not consider entirely new matters during its extended term. Grand Jury proceedings conducted in violation of this rule are fatally defective, and any indictment resulting from such violation must be deemed the product of an "illegally constituted” Grand Jury. Accordingly, such an indictment must be dismissed without regard to any actual prejudice suffered by the accused.
 

 The intricate chain of events underlying the present appeal began on August 10, 1987, when defendant Shelly McClure gave the City of Troy police a sworn deposition accusing her stepfather, defendant Martin Williams, of rape. Shortly after a felony complaint was filed, McClure’s mother, defendant Donna Williams, began urging her to withdraw her charges.
 
 *87
 
 According to McClure’s subsequent statement to the District Attorney, the subject of money arose, and an understanding was ultimately reached under which McClure would be paid $3,000 to "drop” the charges by signing a recantation statement prepared by defendant Michael Barrett, a local attorney who had previously practiced in partnership with the current District Attorney, James Canfield. Defendant Jeffrey Snyder, McClure’s boyfriend, participated in these conversations, as well as in the two meetings that were subsequently held in Barrett’s law office. A warrant for McClure’s stepfather’s arrest was, in fact, canceled on the strength of the statement McClure signed in Barrett’s office.
 

 When these machinations came to the attention of the District Attorney’s office in mid-September of 1987, McClure and Snyder acknowledged having accepted money in exchange for McClure’s recantation. Defendant Barrett was promptly replaced by another lawyer as the stepfather’s attorney of record on the rape charge. According to McClure, the new lawyer, defendant Robert Becher, acting in concert with her mother, soon pressured her into signing a second sworn statement reaffirming her first recantation of the rape accusation and denying any criminal conduct by defendant Barrett. Subsequent events caused investigators to suspect Becher’s complicity in the efforts to tamper with McClure’s testimony.
 

 During the period when these events were unfolding, a Rensselaer County Grand Jury was sitting, with its term scheduled to end on October 13, 1987. Shortly before that date, District Attorney Canfield sought to be relieved of any responsibility in the McClure matter because of his prior association with Barrett. Additionally, in a separate request, he and the current Grand Jury foreperson asked that the term of the sitting Grand Jury be extended to November 13, 1987 on the ground that "this Grand Jury ha[d] not yet completed its work or rendered to the Court a final handup.” Apparently, this request was made with the idea that the extended Grand Jury would investigate the McClure matter under the supervision of a Special Prosecutor, while the incoming Grand Jury, whose term was about to begin, was handling other, more routine matters under District Attorney Canfield’s supervision.
 

 Pursuant to these separate requests, a Special Prosecutor was appointed to pursue the McClure investigation, and the term of the sitting Grand Jury was extended. The Grand Jury
 
 *88
 
 did not hear evidence or take any other action on the McClure matter before its original term expired. During its extended term, however, the Grand Jury heard evidence and issued an indictment charging defendants with bribery, conspiracy and various related counts.
 

 In response to defendants’ CPL 210.20 motion, the trial court dismissed the indictment, holding that the extended Grand Jury had exceeded its jurisdiction by taking action on a matter wholly outside the investigations conducted during its original term
 
 (see,
 
 CPL 190.15 [1]). The Appellate Division, however, reversed and reinstated the indictment. The court initially noted that the order extending the Grand Jury’s term was facially proper, since it was based upon a representation by the District Attorney and the foreperson that the Grand Jury needed more time to complete its existing business. Relying on
 
 People v Stern
 
 (3 NY2d 658) and
 
 Matter of Reports of Grand Jury of Montgomery County Impaneled Apr. 30, 1979
 
 (88 AD2d 1054, 1055), the court reasoned that " '[hjaving been properly extended, the Grand Jury was competent to take any action authorized by law, including even returning an indictment concerning a matter unrelated to its original investigation.’ ” (139 AD2d, at 141.) Moreover, the court held, even if the Grand Jury was not in "technical compliance” with the rules governing Grand Jury extensions, dismissal of the resulting indictments was not required, since the indicting entity was operating "under color of law” as a de facto Grand Jury, defendants were provided with "all the protections afforded by a de jure Grand Jury” (139 AD2d, at 142, 143) and there was no actual prejudice or violation of the accuseds’ constitutional rights. Having found both of these alternative rationales unpersuasive, we now reverse.
 

 The use of the Grand Jury system as a bulwark against oppressive governmental action has long historical and common-law roots
 
 (see generally, People v Iannone,
 
 45 NY2d 589). Nonetheless, within constitutional limits (NY Const, art I, § 6), the scope of the Grand Jury’s power, as well as the rules governing its formation and the remedies for violations of those rules, may be modified by statute. Indeed, article 190 of the Criminal Procedure Law contains extensive and detailed provisions affecting the manner in which the Grand Jury is to operate. It is to those provisions that we must look in determining the propriety of a particular holdover Grand Jury’s actions.
 

 
 *89
 
 Before the adoption of the Criminal Procedure Law, this court held that a properly extended Grand Jury has the power to issue an indictment on a subject unrelated to the matters it was investigating during its original term
 
 (People v Stem, supra).
 
 In so ruling, the court relied on the generally broad powers vested in Grand Juries and noted that those powers should not be curtailed in the absence of a "clearly drawn statute”
 
 (id.,
 
 at 662-663;
 
 see,
 
 former Code Crim Pro §§ 39, 40;
 
 cf.,
 
 § 244). However, the proposition established in
 
 Stem (supra)
 
 is no longer viable under the current provisions of the Criminal Procedure Law.
 

 CPL 190.15 (1) provides that upon the expiration of a Grand Jury’s term, "the court may, upon declaration of both the grand jury and the district attorney that such grand jury has not yet completed or will be unable to complete certain business before it, extend * * * the existence of such grand jury to a specified future date, and may subsequently order further extensions
 
 for such purpose”
 
 (emphasis supplied). This statute, which has no cognate in the former Code of Criminal Procedure, prescribes certain technical formalities necessary for extending Grand Juries, i.e., a joint application by the District Attorney and the Grand Jury foreperson
 
 (see generally, Matter of McClure v County Ct,
 
 41 AD2d 148). However, the statute’s import is by no means limited to such formalities. To the contrary, the statute’s plain language limits Grand Jury extensions to those that are necessary to permit the completion of unfinished business. The statute thus has the substantive effect of curtailing a holdover Grand Jury’s jurisdiction. The apparent purpose was to eliminate the danger of "vestpocket” Grand Juries, a danger that was specifically identified by the dissenter in
 
 Stern (supra,
 
 at 664-665 [Fuld, J.]).
 

 With that significant purpose in mind, we cannot agree that the statute was satisfied here merely because the technical requirement of a joint "unfinished business” declaration was fulfilled. It is undisputed that all of the Grand Jury’s pending matters were, in fact, actually completed by the end of the Grand Jury’s original term. Thus, there was no "unfinished business” for the holdover Grand Jury to consider during its extended term, and, regardless of the technical propriety of the Supreme Court’s extension order, the Grand Jury’s consid
 
 *90
 
 eration of the McClure matter was wholly unauthorized.
 
 *
 

 Whether such an irregularity in the Grand Jury proceeding requires dismissal of the resulting indictment must also be determined by reference to the clear provisions of the Criminal Procedure Law. The Appellate Division’s conclusion — that dismissal was not required because the defect in the Grand Jury proceedings, if any, did not prejudice or affect a substantial right of the accused — was premised upon the "de facto” Grand Jury doctrine, which is derived from a line of cases that, in the main, predates the adoption of the present statutory scheme
 
 (see, e.g., Matter of McDonald v Colden,
 
 294 NY 172;
 
 People v Youngs,
 
 151 NY 210;
 
 People v Petrea,
 
 92 NY 128;
 
 Dolan v People,
 
 64 NY 485;
 
 but see, Matter of Seidenberg v County Ct,
 
 34 NY2d 499). However, since the principle established in these cases has been incorporated, in modified form, in the pertinent provisions of CPL article 210, the analysis must be confined to the terms of that article.
 

 CPL 210.20 (1) (c) authorizes a court to dismiss an indictment on the ground that "[t]he grand jury proceeding was defective, within the meaning of [CPL] 210.35”. CPL 210.35, in turn, sets forth four specific types of defects, including an "illegally constituted” Grand Jury and certain quorum deficiencies (CPL 210.35 [l]-[3];
 
 see also,
 
 CPL 210.35 [4] [concerning failures to accord the target a right to testify]). A separate catchall provision is included for those proceedings which "otherwise fail to conform to the requirements of [CPL art 190]
 
 to such degree that the integrity thereof is impaired and prejudice to the defendant may result”
 
 (CPL 210.35 [5] [emphasis supplied]). This catchall provision is the statutory equivalent of the common-law principle that an indictment issued by a legally constituted Grand Jury need not be dismissed because of a simple technical error if the accused was not prejudiced or the fundamental integrity of the process impaired.
 

 The clear intention of the statute’s drafters was to establish a rule of automatic dismissal for a limited number of impro
 
 *91
 
 prieties that were deemed most serious while leaving the common-law "de facto” Grand Jury principle intact for other, less serious infractions of the article 190 rules. Thus, in cases involving any of the specific defects delineated in CPL 210.35 (l)-(3), dismissal of the indictment is the necessary consequence, and judicial inquiries into prejudice to the accused or other forms of actual harm are wholly out of place.
 

 In this instance, the defect in the Grand Jury proceeding was sufficiently serious to bring it within the statutory provisions for dismissal without regard to prejudice. Because the proceedings relating to the McClure matter were conducted by a Grand Jury that could not properly have been extended for that purpose, the resulting indictment must be deemed one issued by an "illegally constituted” Grand Jury within the meaning of CPL 210.35 (1). Hence, despite defendants’ failure to establish any actual prejudice or violation of their constitutional rights, dismissal of the indictment is the appropriate remedy
 
 (see also, People v Leahy,
 
 72 NY2d 510).
 

 Since we conclude that the order of the court below must be reversed because of this fundamental defect in the Grand Jury proceeding, we do not reach defendants’ contentions regarding other claimed defects arising from the conduct of District Attorney Canfield and the appointed Special Prosecutor.
 

 Accordingly, the order of the Appellate Division should be reversed and the trial court order dismissing the indictment, without prejudice to resubmission, reinstated.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
 

 Order reversed and order of Rensselaer County Court reinstated.
 

 *
 

 We reject the People’s suggestion that the McClure investigation could be considered a pending matter because the District Attorney had mentioned it to the Grand Jury foreperson before the Grand Jury’s original term had expired. Even if there were factual support on the record for the argument, we would not find it dispositive, since such informal communications are not sufficient to bring an existing law enforcement investigation within the official business of the Grand Jury as a whole
 
 (see generally,
 
 CPL 190.25 [1]).