OPINION OF THE COURT
Randall T. Eng, J.
In an apparent case of first impression, the court is faced with the following issue: May the actions of a prosecutor in instructing the members of a Grand Jury to disregard previ *243 ously received exculpatory evidence form the basis for a motion to dismiss an indictment, pursuant to CPL 210.35 (5), on the grounds that the integrity of the Grand Jury proceeding was impaired and prejudice to the defendant may have resulted?
In this 19-count indictment, Adrienne Lincoln has been charged with a variety of related offenses including grand larceny in the third and fourth degrees, forgery in the second degree, criminal possession of a forged instrument in the second degree, and petit larceny. Predicated upon the prosecution’s theory of a "continuing crime”, it is alleged that the defendant executed forged savings account withdrawal slips on six separate occasions between January 13 and February 11, 1993, thereby stealing a total of $3,400 from the credit union savings account of one Deloris Ward.
By memorandum decision, dated September 13, 1993, this court found that legally sufficient evidence was presented before the Grand Jury to sustain each of the offenses charged in the indictment. Nevertheless, the court reserved decision on the defendant’s motion to dismiss the indictment because of its concern for the integrity of the Grand Jury process, based upon the possible impropriety of the prosecutor’s legal instructions to the Grand Jury. More specifically, the court questioned the legality of the prosecutor specifically directing the Grand Jury to disregard exculpatory testimonial evidence of a nonidentification of the defendant at a lineup, after the prosecutor had unilaterally introduced that evidence through the testimony of an alleged eyewitness.
The alleged eyewitness, a Mr. Christopher Davis, was the former branch manager of the Port Authority Federal Credit Union, the banking institution in which the subject transactions allegedly occurred. After testifying that there were times that he performed the functions of a teller at the credit union, Mr. Davis was shown three "share withdrawal receipts” pertaining to four withdrawal transactions that had occurred on January 15, January 19, and twice on February 2, 1993. By referring to the listed "teller identification number” on each of those receipts, the witness testified that he performed the four subject transactions, totalling $2,400 in withdrawals from the savings account of Deloris Ward. Mr. Davis was then questioned by the prosecutor about his presence and participation in a lineup at the 103rd Police Precinct, on March 9, 1993. As set forth below, the answers provided by this witness *244 resulted in the subsequent legal instructions that are the subject of this decision:
"Q. I direct your attention to the date of March 9, 1993. On that date did you go to the 103 Police Precinct?
"A. Yes, I did.
”Q. And did you view what is referred to as a lineup at the police precinct on that day?
"A. Yes, I did.
"Q. Based solely on your own individual recollection of the transactions that you performed at the credit union on January 15, 1993, January 19, 1993 and February 2, 1993, and based only on your recollection of what you did on those three days, did you see anyone in that lineup that you recognize?
"A. No.”
Upon receiving a negative answer[1] to her inquiry about whether the witness had made a positive identification of the defendant at the lineup, the prosecutor simply abandoned that particular line of questioning, never seeking to rehabilitate her witness through a more precise questioning process. Consequently, the Grand Jury was inescapably left with the distinct impression that this witness failed to identify the defendant at a corporeal lineup, although he later testified that he was able to identify this same individual after viewing copies of still photographs generated from videocamera surveillance photographs taken during the course of the same transactions.
Faced with the untenable prospect of having the Grand Jury consider the exculpatory component of Davis’ testimony and (for some reason) electing not to recall the former bank manager as a witness, the prosecutor decided to, in effect, expunge the unfavorable material from the record. Of course, in so doing the prosecutor was forced to make reference to the testimony of a prior witness, Police Officer Edward Santiago, who seven days earlier (June 30, 1993) had testified before the Grand Jury about the mechanics of the lineup and the presence of the defendant therein. Officer Santiago had testified to the fact that Christopher Davis had viewed the lineup, but he was not asked the results of the identification procedure that he conducted.
Whereupon, at the conclusion of Christopher Davis’ testi *245 mony and immediately prior to her charge on the law, the prosecutor instructed the Grand Jury in this fashion: Ms. Soltys: "On the date of June 30, 1993, you heard testimony from Police Officer Edward Santiago concerning the lineup that he conducted on that date. For the purpose of this Grand Jury presentment * * * I’m sorry, for the lineup he conducted at the 103 Precinct on the date of March 9, 1993, not the date of June 30, 1993. For the purposes of this Grand Jury presentment, you are to disregard any testimony concerning the lineup proceeding that occurred. Your evaluation of the evidence should be based on the evidence that was presented to you right before the Grand Jury.”
In seeking to sustain the validity of the indictment, the prosecutor has chosen to label the above-quoted passage as a "curative instruction”. Contending that she acted in "good faith” and that no "prejudice” inured to the defendant as a result of the so-called "curative instruction”, the prosecutor argues that the defendant’s motion to dismiss the indictment should be denied. Furthermore, it is the People’s position that the defendant "would have been indicted for the same charges regardless of whether or not any evidence concerning the March 9, 1993 lineup was presented.”
In sharp opposition thereto, the defendant asserts that the challenged legal instructions were anything but "curative”. Characterizing the prosecutor’s directions as prejudicial and misleading, the defendant strenuously argues that by instructing the Grand Jury to disregard the "highly exculpatory evidence” of nonidentification, the effect was to mislead the Grand Jury, thereby prejudicing the defendant by depriving her of her constitutional right to due process of law in the Grand Jury.
CONCLUSIONS OF LAW
Due in part to the inherently one-sided nature of Grand Jury proceedings and, in some instances, their potential for abuse, the courts of this State have frequently felt compelled to comment upon the "dual role” of the prosecutor within the Grand Jury and to stress the importance of "fair dealing” and limited discretion. In People v Lancaster (69 NY2d 20), the Court of Appeals took particular pains to remind prosecutors of their duty of fair dealing, by stating: "The prosecutor’s discretion in presenting the case to the Grand Jury, however, is not unbounded, for it is settled that at a Grand Jury *246 proceeding, the prosecutor performs the dual role of advocate and public officer, charged with the duty not only to secure indictments but also to see that justice is done; ’as a public officer he owes a duty of fair dealing to the accused and candor to the courts’ ” (People v Lancaster, supra, at 26, quoting People v Pelchat, 62 NY2d 97, 105). The concept of fair dealing is, of course, subjective, and cannot be discussed in a vacuum, but must be applied to the particular facts and circumstances at issue. The scope of the fair dealing standard is, however, more clearly defined and, as the Lancaster decision holds, is applicable to the legal instructions delivered by the prosecutor to a Grand Jury. In further defining the prosecutor’s duty of fair dealing, the Court of Appeals explained: ’’The prosecutor’s duty of fair dealing extends not only to the submission of evidence, but also to instructions on the law, for, by statute, responsibility for instructing the Grand Jury on the law rests solely with the court and the prosecutor, and the Grand Jury may not seek legal advice from any other source” (People v Lancaster, supra, at 26, citing CPL 190.25 [6]; People v Di Falco, 44 NY2d 482, 486-487; Matter of Report of Special Grand Jury of County of Monroe Empanelled Feb. 14, 1978, 77 AD2d 199, 202).
In addressing the issues herein and attempting to apply the fair dealing standard to the actions of the prosecutor in the Grand Jury proceeding that resulted in the subject indictment, the court’s attention is immediately drawn to the prosecutor’s unilateral decision to specifically direct the Grand Jury to disregard legally competent and exculpatory evidence. Notwithstanding the argument advanced by the People, the court cannot conceive how the prosecutor’s instructions could rationally be construed as "curative”. Black’s Law Dictionary defines "curative”, as follows: "intended to cure (that is, to obviate the ordinary legal effects or consequences of) defects, errors, omissions or irregularities” (Black’s Law Dictionary 343 [5th ed 1979]). In the case at bar the prosecutor’s instructions were, at best, an ill-considered reaction to the unsatisfactory course of the proceedings and, at worst, an improper attempt to strike legally competent evidence from the minds of the grand jurors, exculpatory evidence that had been admitted at the behest[2] and with the knowledge of the prosecutor. If *247 the prosecutor hoped to "cure” something following Mr. Davis’ testimony, it certainly wasn’t a "defect”, an "error”, an "omission” or an "irregularity”. The witness had apparently testified in a truthful manner and his testimony was anything but a surprise to the prosecutor. To allow a prosecutor in the Grand Jury to strike legally competent testimony behind the facade of a "curative instruction” would be to render the holding in People v Lancaster (supra), specifically the concept of "fair dealing to the accused”, meaningless. The court is singularly unimpressed with the alternative explanation offered by the prosecutor, to the effect that since the witness, Mr. Davis, found it inconvenient to appear and testify before the Grand Jury on June 30, 1993, the proceeding was continued until July 7, 1993, resulting in the Grand Jury having already heard Police Officer Santiago’s testimony, thereby forcing the prosecutor to question Mr. Davis about the lineup procedure. In light of the nearly four-month hiatus between the lineup and the Grand Jury presentation, the People had more than ample time to investigate the matter and ascertain the potential testimony from their witnesses.
Although the court has found that the prosecutor did not act in good faith, the People still maintain that the defendant suffered no prejudice as a result of the improper legal instructions. Again, the court must disagree with the position espoused by the People since it is unsupported by the undisputed facts herein. Whether or not the witness actually identified the defendant at the police lineup and only answered in the negative in the Grand Jury because he couldn’t be sure if his positive identification stemmed from his personal recollection of the defendant from the prior subject banking transactions or was the product of having subsequently viewed the defendant in the surveillance photographs, the proof, as presented by the prosecutor, failed to apprise the Grand Jury of this consideration. To the best of their knowledge, the witness had unequivocally failed to identify the defendant at the corporeal lineup, yet they were now being directed by the prosecutor to disregard that (seemingly) exculpatory evidence. What could be more prejudicial to the due process rights of the defendant?
The People have asked this court to be guided by the Court of Appeals holding in People v Calbud, Inc. (49 NY2d 389), in its evaluation of the legal instructions given to the Grand Jury. Ironically, it is the cautionary language inserted at the end of the Calbud decision that will form the basis of the *248 court’s decision today. After setting forth now the well-settled distinction in law and function between the Grand Jury ("to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution”) and the petit jury ("assessing the evidence * * * and determining whether the People have proven the guilt of the accused beyond a reasonable doubt”), the Court of Appeals held that "it would be unsound to measure the adequacy of the legal instructions given to the Grand Jury by the same standards that are utilized in assessing a trial, court’s instructions to a petit jury” (People v Calbud, Inc., supra, at 394).
However, in a warning meant to convey its deep concern for the integrity of the Grand Jury process and the need for the prosecutor to comply with the due process rights of the defendant, the Court of Appeals noted: "we do not intend to suggest by our holding in this case that inadequate or incorrect legal instructions to the Grand Jury would never constitute grounds for dismissing an indictment as defective under CPL 210.35 (subd 5). To the contrary, we recognize that there may be situations in which the instructions to the Grand Jury are so misleading that the indictment could not be permitted to stand even though it is supported by legally sufficient evidence” (People v Calbud, Inc., supra, at 395 [emphasis supplied]).
As indicated, the Legislature has expressed its own concern for the integrity of the Grand Jury process by enacting CPL 210.35. In authorizing a court to dismiss an indictment on the ground that the Grand Jury proceeding was defective within the meaning of paragraph (c) of CPL 210.20 (1), CPL 210.35 sets forth four specific types of defects, plus a fifth "catchall provision” which is included for those proceedings which "otherwise fail * * * to conform to the requirements of article one hundred ninety to such degree that the integrity thereof is impaired and prejudice to the defendant may result” (CPL 210.35 [5] [emphasis supplied]; see, People v Williams, 73 NY2d 84, 90).
When read together, the holding in People v Calbud, Inc. (supra) and the statutory language of CPL 210.35 (5) clearly provide that in certain situations, i.e., when the integrity of the Grand Jury has been impaired, an indictment may be dismissed even though supported by legally sufficient evidence and even if "actual prejudice” has not been established. In those situations, it is enough if the defendant can properly *249 demonstrate that "prejudice to the defendant may result” (CPL 210.35 [5]; Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 210.35, at 676; see also, People v Di Falco, 44 NY2d 482, 487, supra).
In conclusion, the court finds that the actions of the prosecutor, in specifically instructing the Grand Jury to disregard the exculpatory evidence of a nonidentification by the key witness, constituted a clearly defined impairment to the integrity of the Grand Jury proceeding, resulting in prejudice to the defendant and mandating a dismissal of the indictment, pursuant to CPL 210.35 (5).
Accordingly, the defendant’s motion for an order dismissing the indictment is granted.

. It is the People’s position that the witness, Christopher Davis, positively identified the defendant at the March 9,1993 lineup.

. According to the affirmation submitted by the prosecutor in response to the court’s September 13, 1993 decision, Mr. Davis had appeared at the District Attorney’s office on July 7, 1993 and had expressly indicated the content of his forthcoming Grand Jury testimony.