People v Van Alphen (2021 NY Slip Op 04056)





People v Van Alphen


2021 NY Slip Op 04056


Decided on June 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 24, 2021

109320
[*1]The People of the State of New York, Respondent,
v
Goliath Van Alphen, Appellant.

Calendar Date:April 22, 2021

Before:Garry, P.J., Egan Jr., Lynch and Colangelo, JJ.

John Ferrara, Monticello, for appellant.
Paul Czajka, District Attorney, Hudson (James Carlucci of counsel), for respondent.



Colangelo, J.
Appeal from a judgment of the County Court of Columbia County (Koweek, J.), rendered October 18, 2016, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child (four counts), promoting a sexual performance by a child, criminal solicitation in the third degree, criminal sexual act in the first degree and aggravated sexual abuse in the third degree (four counts).
In June 2015, defendant and his three codefendants were charged with various crimes relating to their alleged sexual abuse of four children born in 2002, 2004, 2006 and 2004 (hereinafter victims A, B, C and D, respectively) over a period of several years. Defendant was charged with committing 19 of the 58 crimes charged in the indictment — namely, four counts of predatory sexual assault against a child, four counts of course of sexual conduct against a child in the first degree, six counts of aggravated sexual abuse in the third degree, two counts of criminal sexual act in the first degree, one count of aggravated sexual abuse in the third degree, one count of promoting the sexual performance of a child and one count of solicitation in the third degree. Following a joint jury trial, defendant was convicted of four counts of predatory sexual assault against a child, four counts of aggravated sexual abuse in the third degree, and one count each of promoting a sexual performance by a child, criminal solicitation in the third degree and criminal sexual act in the first degree. [FN1] Defendant was sentenced to prison terms of 25 years to life for each conviction of predatory sexual assault against a child, 25 years, followed by 25 years of postrelease supervision, for his conviction of criminal sexual act in the first degree, seven years, followed by 10 years of postrelease supervision, for each conviction of aggravated sexual abuse in the third degree, 2&frac13; to 7 years for his conviction of promoting a sexual performance by a child, and 1&frac13; to 4 years for his conviction of solicitation in the third degree. The court directed that all of the sentences run consecutively, except that the sentence on his conviction for criminal sexual act in the first degree is to run concurrently with his sentence for one of the predatory sexual assault convictions. Defendant appeals.
Defendant initially argues that Paul Czajka, the Columbia County District Attorney (hereinafter DA), should have been disqualified from representing the People in this case and a special prosecutor appointed because, prior to being elected as the DA, he was the Family Court Judge who presided over matters involving defendant and his children. Judiciary Law § 17, the governing authority for disqualifications, provides that "[a] judge . . . or former judge . . . shall not act as attorney or counsellor in any action, claim, matter, motion or proceeding, which has been before him [or her] in his [or her] official character." Thus, the central inquiry is whether the "matter[s], . . . or proceeding[[*2]s]" over which Family Court (Czajka, J.) presided are the same as the instant prosecution of defendant. We must answer this question in the negative.
As the People correctly contend, the petitions over which Family Court presided involved allegations that defendant neglected his children, based on his use of cocaine and his failure to enroll and stay enrolled in a drug rehabilitation program. Allegations of sexual abuse, the focus of the instant prosecution, were never raised in the Family Court matters. In addition, the parties to the proceedings were distinct from each other. The Department of Social Services commenced the Family Court proceedings against defendant on behalf of his children, whereas the indictment was brought against defendant in the name of the People of the State of New York. We note that the cases cited by defendant that favor disqualification concerned disqualification of a district attorney from prosecuting defendants in criminal cases over which he or she presided in the same court as a County Judge (see e.g. People v Sumter, 169 AD3d 1275, 1276 [2019]; People v Oakley, 104 AD3d 1059 [2013]; Matter of Czajka v Koweek, 100 AD3d 1136, 1139 [2012]). It is clear to this Court that the instant criminal matter was not before [the Family Court Judge] "in his official character" (Judiciary Law § 17; compare People v Sumter, 169 AD3d at 1276). "Nor is there any allegation of factual ties between the present matter and any prior matters over which [the Family Court Judge] presided" (People v Burks, 172 AD3d 1640, 1642 [2019] [citation omitted], lv denied 33 NY3d 1102 [2019]). Accordingly, we find that Judiciary Law § 17 does not compel the DA's disqualification here (see id.; Matter of Columbia County Subpoena Duces Tecum Dated Mar. 20, 2013 [Czajka], 118 AD3d 1081, 1083 [2013]; see also Matter of Gordon, 192 AD3d 1206, 1208-1210 [2021, Colangelo, J., dissenting]).
Defendant next contends that the grand jury was extended in contravention of CPL 190.15 (1) and the grand jury thus lacked jurisdiction to act and return a superseding indictment against him. Pursuant to CPL 210.35, a grand jury proceeding is defective and an indictment subject to dismissal where, among other reasons, the grand jury is "illegally constituted" (CPL 210.35 [1]). Defendant argues that that the grand jury was illegally constituted because the People failed to comply with the time requirements for requesting an extension of the term, and the term was improperly extended to consider entirely new matters. Defendant's contentions are belied by the record.
First, the record reflects that both the People's request for the extended grand jury term and the order granting that request were made within the statutorily prescribed period (see CPL 190.15 [1]). Second, defendant argues that the order of extension was improper, and the resulting superseding indictment impermissibly issued, because the People, in their request to extend the grand jury term, [*3]failed to mention defendant or unfinished business concerning defendant as a reason for the extension; rather, the People set forth projected new matters and new individuals to be examined. In support of his position, defendant principally relies upon the Court of Appeals' decision in People v Williams (73 NY2d 84 [1989]). We find such reliance to be misplaced. In Williams, the request for the grand jury's extension dealt exclusively with new matters and new individuals to investigate. Further, the investigation and subsequent indictment issued by that extended grand jury dealt solely with such new parties and new topics and not with the subjects or business of the prior grand jury term (id. at 89-90).
However, the statute does not require that the request for the extension — or for that matter the extension order itself — list a particular defendant as one of the reasons for the extension or catalogue every topic that the grand jury will investigate during the extended term. The extended grand jury remains properly constituted and comports with statutory requirements where, as here, it simply continues to investigate matters previously examined that it "has not yet completed" regardless of the reasons given for such extension (CPL 190.15 [1]). To this point, we find Matter of Coonan v Roberts (71 AD2d 563 [1979]) to be instructive. In Matter of Coonan, "the application for an extension was premised upon a different case involving other persons," but the First Department held that this factor was not dispositive since the matters and individuals upon which the extended grand jury acted turned out to be individuals and subject matters investigated during the initial grand jury term (id. at 563). Thus, consistent with the statutory provisions, the extended grand jury dealt with "not yet completed . . . business" (CPL 190.15 [1]) from the initial term. "Although it would have been better practice to request the extension to cover the subject investigation, the failure to do so did not oust the [g]rand [j]ury of jurisdiction" (Matter of Coonan v Roberts, 71 AD2d at 564).
A similar situation obtains here. Although the People did not specifically list defendant or the particular business "not yet completed" in the request for an extension (CPL 190.15 [1]), the extended grand jury evidentially continued to address the same individuals and the same subject matters addressed in the initial grand jury term. As the resulting superseding indictment reflects, the grand jury during the extended term did continue to investigate business "not yet completed" during the initial term — the sexual abuse by defendant and others that had been investigated during the initial grand jury term. The superseding indictment returned by the grand jury, which contained additional charges against defendant, thus manifests compliance with the provisions of the statute.
Defendant next contends that victims B, C and D, all of whom were at least nine years old at the [*4]time of trial, gave unsworn testimony at trial and that County Court improperly denied his request for a corroboration charge. "Every witness more than nine years old may testify only under oath unless the court is satisfied that such witness cannot . . . understand the nature of an oath" (CPL 60.20 [2]). Although a witness deemed ineligible to testify under oath "may nevertheless be permitted to give unsworn evidence if the court is satisfied that the witness possesses sufficient intelligence and capacity to justify the reception thereof" (CPL 60.20 [2]), "the law requires that before unsworn statements can support a conviction[,] they must be corroborated to elevate their trustworthiness to the level associated with sworn testimony" (People v Groff, 71 NY2d 101, 108 [1987]; see CPL 60.20 [3]).
Defendant does not argue that these child witnesses were incapable of understanding the nature of an oath, but instead that County Court did not administer an oath to them. The record reveals that, although victim A was the only child witness to whom a formal oath was administered, the court, in denying defendant's request for a corroboration charge, stated, "I believe I issued an oath to all four witnesses — specifically [victim A], was the typical sworn oath, but I specifically asked each of the others if they promised to tell the truth and they understood it, and I consider that an oath." Considering that "the form of an oath is flexible" (People v Wilson, 255 AD2d 612, 613 [1998], lv denied 93 NY2d 981 [1999]), the record supports the court's statement that it gave these child witnesses an oath, modified to their level of understanding.[FN2] Thus, contrary to defendant's contention, County Court properly determined that victims B, C and D did give sworn testimony, thereby obviating the need for corroboration of their testimony and a charge to that effect.[FN3]
Defendant next contends that County Court committed reversible error by admitting a medical report into evidence in its entirety without redacting those portions thereof that stated that the foster mother reported that "[victims A, B and C] talk freely about their genitals, and that [victim C] uses the word c*** to describe her genitals" and "[h]as been removed from [her] biological parents several times [and is] currently living with foster parents," as such statements do not pertain to diagnosis or treatment and constitute impermissible hearsay. Medical records "fall within the business records exception when they reflect acts, occurrences or events that relate to diagnosis, prognosis or treatment or are otherwise helpful to an understanding of the medical" needs of a patient (People v Maisonette, 192 AD3d 1325, 1329 [2021]). "[W]here a child was or may have been abused, just as in a domestic violence situation, details of the abuse, even including the perpetrator's identity, may be relevant to diagnosis and treatment because the medical provider must consider the victim's safety when creating [*5]a . . . plan and gauging the patient's psychological or counseling needs" (id. [internal quotation marks, brackets, ellipsis and citations omitted]). We find that the referenced statements in the report would have demonstrated to the physician that the then four-year-old child was a victim of sexual abuse, which was relevant to her diagnosis and treatment, and therefore properly admitted (see People v Spicola, 16 NY3d 441, 448-449 [2011], cert denied 565 US 942 [2011]). We also find, on the record before us, that any error in admitting the statements is harmless beyond a reasonable doubt. The detailed testimony of victims A, B, C and D, their foster mother, the Child Protective Services worker and the therapist, among other things, provided overwhelming evidence of defendant's guilt, and there was no significant probability that the jury would have acquitted defendant had such evidence not been admitted (see People v Kello, 96 NY2d 740, 744 [2001]; People v Crimmins, 36 NY2d 230, 242 [1975]; People v Gaylord, 194 AD3d 1189, ___, 2021 NY Slip Op 03080, *5 [2021]; People v West, 166 AD3d 1080, 1088 [2018], lv denied 32 NY3d 1129 [2018]).
We also reject defendant's contention that he was denied a fair trial when, at the conclusion of victim C's testimony, County Court stated to victim C, "Thank you very much. We appreciate you being here and telling the truth." We note that, although one of the codefendants objected to this comment, defendant did not object and therefore he has failed to preserve this claim for our review. Nonetheless, we find that any prejudice was alleviated when the court gave a curative instruction to the jury, shortly after the comment was made, that "[t]he question of truth is a question of fact to be determined by the 12 of you who will ultimately make the determinations of guilty or not guilty on each of the respective charges. And it's your job to do that, as you are the finders of the fact, and not mine. You are not to draw any inference whatsoever from the fact that I used the word truth, as any indication that I have formed an opinion, or even that my opinion on the issue of truth matters because it is ultimately your responsibility. So please disregard that last statement." In light of the court's immediate and appropriate curative instruction, defendant was not deprived of a fair trial as a result of the court's comment (see People v Lentini, 163 AD3d 1052, 1055 [2018]; People v Miller, 239 AD2d 787, 787-788 [1997], affd 91 NY2d 372 [1998]; People v Dehler, 216 AD2d at 644). We have examined defendant's remaining contentions, including his assertion that he was prejudiced by the prosecutor's summation and the hearsay testimony of other witnesses, and find that, in light of the immediate and appropriate curative instructions given by the court in each instance, defendant was not deprived of a fair trial (see People v Dehler, 216 AD2d at 644)
Garry, P.J., Egan Jr. and Lynch, JJ., concur.
ORDERED that the [*6]judgment is affirmed.



Footnotes

Footnote 1: This Court affirmed the convictions relating to two of the codefendants, defendant's ex-wife (People v Van Alphen, 167 AD3d 1076 [2018], lv denied 32 NY3d 1210 [2019]) and his former brother-in-law (People v Shackelton, 177 AD3d 1163 [2019], lv denied 34 NY3d 1162 [2020]).

Footnote 2: For instance, County Court asked victim C: "So you are here right now to tell the truth, right?" "And only the truth, right?" "And you are going to promise me that you do that?" To each question victim C gave an affirmative response.

Footnote 3: We acknowledge that in our prior decision addressing a codefendant's appeal, we stated that victim C provided "unsworn testimony" in the joint trial (People v Van Alphen, 167 AD3d at 1078 [referring to her as "the third child" who gave "unsworn testimony," but also discussing the testimony of victims A and B without referring to it as "unsworn"]). This characterization of victim C's testimony was included in a discussion of the weight of the evidence, and it does not appear that the defendant in that case had raised the issues now posed, i.e., whether County Court erred in failing to require that the child witnesses testify under oath or in failing to provide the jury a corroboration charge. After having now fully considered the issue in this case, we conclude that victim C provided sworn testimony and that our prior characterization — made without a full inquiry into the issue — was in error.