People v Henley (2024 NY Slip Op 05914)

People v Henley

2024 NY Slip Op 05914

Decided on November 27, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 27, 2024

112243 CR-23-0979
[*1]The People of the State of New York, Respondent,
v
Willie Henley, Appellant.

Calendar Date:October 9, 2024

Before:Garry, P.J., Reynolds Fitzgerald, Fisher, McShan and Powers, JJ.

Angela Kelley, East Greenbush, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Nathan M. Bloom of counsel), for respondent.

Fisher, J.
Appeals (1) from a judgment of the County Court of Chemung County (Christopher P. Baker, J.), rendered December 23, 2019, upon a verdict convicting defendant of the crime of promoting prison contraband in the first degree, and (2) by permission, from an order of said court (Ottavio Campanella, J.), entered May 18, 2023, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant, an incarcerated individual, was charged by indictment with promoting prison contraband in the first degree in connection with his alleged possession of a 16¾ inch piece of metal that had been sharpened to a point while he was incarcerated at Elmira Correctional Facility. Following a jury trial, defendant was convicted as charged. County Court (Baker, J.) thereafter sentenced defendant, as a second felony offender, to a prison term of 3½ to 7 years. Defendant moved to vacate the judgment of conviction pursuant to CPL 440.10, which County Court (Campanella, J.) denied without a hearing. Defendant appeals from both the judgment and the order.
We affirm. Defendant first contends that the verdict is against the weight of the evidence. In assessing whether a verdict is supported by the weight of the evidence, "this Court must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Christie, 224 AD3d 1097, 1097-1098 [3d Dept 2024] [internal quotation marks and citations omitted]). The trial evidence included the testimony of three correction officers who described their role in responding to a report of an assault on an incarcerated individual. A correction sergeant testified that he received a complaint of an assault at the phone bank in D block, which is an honor block for individuals who have not received any tickets during their incarceration and are of little disciplinary concern. When he arrived to where the report had been made,[FN1] he observed a red mark on the side of the victim's neck and was concerned that a contraband item had been used. The victim further identified the cell of the perpetrator, and the sergeant dispatched correction officers to that location. The sergeant also testified that incarcerated individuals are given a book containing rules of conduct, which includes a rule prohibiting them from possessing any instrument capable of causing bodily harm.
Following the call from the sergeant, one of the responding correction officers testified that the cell identified by the victim was unoccupied and locked when he arrived,[FN2] but that he learned from an officer stationed at the desk in D block that defendant was housed in that cell. While speaking with the desk officer, the correction officer testified that [*2]defendant approached the desk and asked for his cell to be unlocked so he could go inside. The correction officer testified that he followed defendant to his cell and then ordered defendant to put his hands on the wall for a frisk. According to the correction officer, defendant did not fully comply and adopted an abnormal stance against the wall, causing the officer to grab defendant's right wrist to move it higher up. When he did that, the officer testified that he felt a hard object in defendant's sleeve and observed a metal point sticking out of his sleeve between his fingers. He then felt defendant tensing up and took him to the ground, removing the object and placing defendant in handcuffs. The object was admitted into evidence at trial, and the officer confirmed that it was the same object that he confiscated, which he described as a metal rod with a sharpened point that was 16¾ inches long and ½ an inch wide with a rope wrapped around one side as a handle. He further testified that incarcerated individuals were not permitted to possess such an item because it was a dangerous weapon that could be used for stabbing and cause serious injuries. Another correction officer testified that he later performed a search of defendant's cell and recovered, among other things, a pair of crutches and a leg brace that was resting under the open-air bed; the leg brace was entered into evidence.
For his part, defendant testified that he had never received a ticket or misbehavior report during his five years of incarceration. In his role as a grievance representative for other incarcerated individuals with the facility administration, he had filed numerous complaints against correction officers and the facility — some which were successful. According to defendant, he had just taken a shower and was returning to his cell when a correction officer stopped him at his cell for a search, began to pat him down, and then swung him around and face-first into the ground. Defendant then testified that a second officer jumped onto his back, started to hit him and asked for the "weapon." When shown the confiscated object that the correction officer had testified he found in defendant's shirt, defendant testified he did not recognize it and that he did not have it in his sleeve. Although defendant admitted that he previously had the crutches and leg brace with permission from the medical office, he testified that he had returned both items to the medical office because he was no longer using them and did not want to get a ticket that could potentially remove him from the honor block. When asked on cross-examination whether the correction officers had "lied" and would come to his trial to commit the crime of perjury, defendant said they were lying and he did not know why they would do that against him.
Although a different verdict would not have been unreasonable if the jury had credited defendant's testimony and accepted his theory that the correction officers had planted [*3]evidence on him and fabricated their testimony, the conflicting testimony presented the jury with a credibility determination in which they were free to reject defendant's version of the story (see People v Casey, 214 AD3d 1121, 1122 [3d Dept 2023], lv denied 40 NY3d 927 [2023]; People v Lekovic, 200 AD3d 1501, 1504 [3d Dept 2021], lv denied 38 NY3d 1008 [2022]). Indeed, the People presented the testimony of two correction officers who provided detailed testimony as to the discovery of the weapon that was found on defendant after the assault — one of whom testified that he had "never" seen a weapon that big in his 15 years as an officer — and the means from which the weapon was crafted, being the leg brace that was found in defendant's cell and which was missing one of the five metal support rods. This testimony is further supported by that of the correction sergeant, who evaluated the victim's neck and believed a weapon had been used. Accordingly, when viewing all of the evidence in a neutral light and deferring to the jury's credibility determinations, including the implication that defendant had taken one of the metal rods from the brace and fashioned it into a weapon in violation of facility rules, the weight of the evidence supports the conviction of promoting prison contraband in the first degree (see Penal Law § 205.25 [2]; People v Watkins, 49 AD3d 908, 908-909 [3d Dept 2008], lv denied 10 NY3d 965 [2008]; see also People v Banks, 227 AD3d 1225, 1226-1227 [3d Dept 2024], lv denied 42 NY3d 937 [2024]; People v Jones, 212 AD3d 888, 891 [3d Dept 2023], lv denied 39 NY3d 1111 [2023]).
Next, defendant contends that he was deprived a fair trial due to improper comments made by County Court (Baker, J.) and the prosecutor. Specifically, defendant contends that it was improper for County Court to tell jurors who received a parking ticket during the trial to give them to the prosecutor to handle for them because it created a situation where jurors were to negotiate with, and rely on, the prosecutor for help.[FN3] Defendant further contends that the prosecutor's cross-examination of defendant was improper because it asked defendant to agree that witnesses were lying to the jurors, and further that the prosecutor's comments during opening and closing statements about the case being "straightforward" or "obvious" were improper. Initially, these contentions are not preserved for our review (see People v Rivera, 212 AD3d 943, 947-948 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]). Nevertheless, there is no evidence in the record that a juror had received a parking ticket or communicated with the prosecutor, and County Court correctly remedied its comment to jurors by redirecting parking issues to the court instead, thus "any prejudice was alleviated when the court gave a curative instruction to the jury" once it was brought to the court's attention (People v Van Alphen, 195 AD3d 1307, 1313 [3d Dept 2021], lv denied 37 NY3d 1061 [2021]). Moreover, "[i]nasmuch [*4]as defendant's testimony during both direct and cross-examination clearly suggested that the People's witnesses had fabricated their testimony, it was not improper for the prosecutor to ask him whether he believed that the People's witnesses had lied during their testimony" (People v Head, 90 AD3d 1157, 1158 [3d Dept 2011]). Nor could the prosecutor's remarks during opening or closing statements be classified as so egregious that they deprived defendant of a fair trial or be interpreted as having shifted the burden from the People to defendant (see People v Lall, 223 AD3d 1098, 1110 [3d Dept 2024], lv denied 41 NY3d 984 [2024]; People v Graham, 215 AD3d 998, 1008 [3d Dept 2023], lv denied 40 NY3d 928 [2023]). To the further extent that defendant challenges County Court's comments to jurors to be careful when examining the contraband that was admitted into evidence, implying it was dangerous, such "remark [similarly] did not deprive defendant of a fair trial or reflect bias against him" (People v Cummings, 157 AD3d 982, 987 [3d Dept 2018], lv denied 31 NY3d 982 [2018]; see People v Lancaster, 200 AD3d 1352, 1352 [3d Dept 2021], lv denied 38 NY3d 951 [2022]).
In light of these points, which also form the basis for the CPL 440.10 motion, we reject defendant's contention that he was deprived of his right to the effective assistance of counsel for failing to make or preserve such issues because "counsel will not be found to be ineffective on the basis that he or she failed to make an argument or motion that has little or no chance of success" (People v Lorenz, 211 AD3d 1109, 1113 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1112 [2023]). This includes defendant's contention that his counsel failed to request a Molineux hearing regarding the uncharged assault on the victim, which would have had little chance of success, as that evidence "is inextricably interwoven with the charged crime, provides necessary background, [and] completes a witness's narrative" (People v Hebert, 218 AD3d 1003, 1009 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1080 [2023]).In further evaluating the totality of defense counsel's representation, we conclude that defendant was provided meaningful representation (see People v Kuhn, 221 AD3d 1182, 1184 [3d Dept 2023], lv denied 41 NY3d 1019 [2024]). Specifically, the record as a whole demonstrates that defense counsel presented a clear trial strategy, relying on defendant's clean prison disciplinary record, role as a grievance representative and placement in the honor block to undermine the testimony of the People's witnesses, which was effectively highlighted during his opening statement and convincingly presented in his closing statement (see People v Lall, 223 AD3d at 1109-1110; People v Thompkins, 133 AD3d 899, 901 [3d Dept 2015]). Even though this strategy was ultimately not successful, the record demonstrates that counsel had made decisions and objections [*5]consistent with this strategy, and was well prepared and knowledgeable of the block's floorplan for his cross-examination of witnesses (see People v Perulli, 217 AD3d 1133, 1138 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]; People v Starnes, 206 AD3d 1133, 1143 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]). Moreover, defendant fails to show an absence of explanation for counsel's failure to object to certain testimony, as such objections to hearsay would have little to no chance of success due to certain exceptions, and "counsel may well have concluded that an objection would have only drawn unwanted attention to the statement" (People v Mansfield, 223 AD3d 1111, 1116 [3d Dept 2024] [internal quotation marks and citation omitted], lv denied 42 NY3d 928 [2024]). Furthermore, "[d]efendant's claims regarding the failure of trial counsel to prepare him for his testimony were . . . supported only by his own self-serving affidavit," and are nonetheless undermined by the cogent testimony that he provided (People v Newhall, 206 AD3d 1144, 1153 [3d Dept 2022], lv denied 39 NY3d 941 [2022]). Based on the foregoing, defendant was afforded effective assistance of counsel and, thus, that part of his CPL article 440 motion was properly denied (see People v Covington, 222 AD3d 1166, 1171 [3d Dept 2023], lv denied 41 NY3d 964 [2024]).
As it relates to the balance of defendant's CPL 440.10 motion, County Court (Campanella, J.) properly denied defendant's claim of actual innocence. In order to establish a claim of actual innocence, a defendant must present "newly discovered proof constituting clear and convincing evidence of factual innocence, not mere legal insufficiency of evidence of guilt" (People v Mansfield, 223 AD3d at 1118 [internal quotation marks and citations omitted]; see People v Mosley, 155 AD3d 1124, 1125 [3d Dept 2017], lv denied 31 NY3d 985 [2018]). In support of his motion, defendant provides several grievances that he had authored in the year preceding the incident and a medical note from approximately a month before the incident — neither of which, based on defendant's admissions, constituted newly discovered evidence (see People v Mansfield, 223 AD3d at 1118; see also People v Hamilton, 115 AD3d 12, 20 [2d Dept 2014]). Nor does such proof support defendant's notion that the correction officers planted evidence on him in retribution for filing the grievances, as none of the officers involved in the incident had been the subject of any of the grievances or apparently had knowledge of them. Contrary to defendant's contentions, the medical note does not order defendant to turn in the brace and crutches, but to bring them to his next appointment; it does not indicate whether defendant had turned them in, nor does it support defendant's theory that they were planted in his cell since it appears the contraband was crafted from the brace — not the crutches which were also found in his cell. Rather, this is consistent with the testimony of the correction [*6]officer who searched defendant's cell following the incident and found both items but did not list them as contraband on the contraband receipt [FN4] because defendant was permitted to have them per the medical office. Nevertheless, these contentions were presented to the jury in the form of defendant's testimony, which were considered and rejected by the jury, and at best would serve to impeach or contradict trial evidence from the People's witnesses and therefore failed to cast doubt rising to the level of clear and convincing evidence (see People v Williams, 182 AD3d 776, 780 [3d Dept 2020], lv denied 35 NY3d 1071 [2020]; see also People v Mansfield, 223 AD3d at 1118-1119; People v Lanier, 191 AD3d 1094, 1095 [3d Dept 2021]). Accordingly, County Court properly denied defendant's CPL 440.10 motion, without a hearing (see CPL 440.30 [4] [b]).
Lastly, we reject defendant's claim that the imposed sentence was "unduly harsh or severe" (CPL 470.15 [6] [b]). County Court (Baker, J.) considered various factors, including defendant's involvement with the criminal justice system, such as his prior two violent felonies — one being an assault with a sharp object resulting in six stab wounds. Based on defendant's criminal history and lack of accountability, we see no reason to disturb the sentence imposed by County Court that is consistent with other convictions for promoting prison contraband in the first degree for a second felony offender (see People v Banks, 227 AD3d at 1226; People v Jones, 212 AD3d at 888; People v Watkins, 49 AD3d at 908; see also People v Casey, 214 AD3d at 1122). To the further extent that defendant claims he was punished for exercising his right to a trial because the sentence imposed was significantly greater than the pretrial offer, such contention is unpreserved (see People v Paul, 202 AD3d 1203, 1212 [3d Dept 2022], lv denied 38 NY3d 1034 [2022]). Regardless, we find "nothing in the record establishing that he was punished for asserting his right to trial or that the lengthier sentence ultimately imposed was the result of vindictiveness or retaliation" (People v Mansfield, 223 AD3d at 1117 [internal quotation marks and citations omitted]). We have examined defendant's remaining contentions and have found them to be without merit or rendered academic.
Garry, P.J., Reynolds Fitzgerald, McShan and Powers, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: Although the incident occurred in D block, the victim reported it in E block.

Footnote 2: The incident occurred during a cell option period, which is a time where incarcerated individuals are free to roam about the cell block to use the facilities to shower, cook, socially interact or for recreation, but the individual cell doors remain locked and permission to unlock and enter must be requested.

Footnote 3: Although recorded on the trial transcript, such comment was made during a brief pause in the proceedings between the initial instructions by County Court and opening statements, when several jurors had left the courtroom for a break. Defense counsel, who was in the room, did not place an objection on the record at that time or when proceedings resumed. Rather, such objection was later made after opening statements and when court resumed in the afternoon following a break for lunch.

Footnote 4: This is the report following a cell frisk or search, listing what contraband was found by the officer.